STATE OF NEBRASKA, APPELLEE, V. GEORGE E. CARTER, APPELLANT.
STATE OF NEBRASKA, APPELLEE, V. VICTOR L. CARTER, APPELLANT.
413 N.W.2d 901

Filed October 16, 1987.    Nos. 86-442, 86-445.

William J. Elder of McCormack, Cooney, Mooney & Hillman, and Raymond J. Hasiak of Dowd, Fahey, Dinsmore & Hasiak, for appellants.

Robert M. Spire, Attorney General, and William L. Howland, for appellee.

BOSLAUGH, C.J., Pro Tem., WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

BOSLAUGH, C.J., Pro Tem.

The defendants, Victor L. Carter and George E. Carter, were charged in separate informations with first degree murder, with use of a firearm in the commission of a felony, and with being habitual criminals. In the trial court the cases were consolidated for trial. In this court they were consolidated for briefing and argument.

The jury returned verdicts of guilty, and the defendants were each sentenced to life imprisonment on the murder count and to a consecutive term of 10 years on the use of a firearm count.

On appeal the defendants contend that the trial court erred in overruling their motion to suppress identification testimony of Peggy Hatfield and Scott Reynolds, in failing to sustain their motion for a continuance, in failing to sustain their pleas in abatement, in permitting the State to introduce the preliminary hearing testimony of an absent witness, in that the trial was tainted with racial prejudice, in that numerous evidentiary rulings were erroneous, and in granting the State's motion in limine to suppress prior inconsistent evidence.

The record shows that the victim, Jeffrey R. Peterson, died as the result of being shot during the early morning hours of

October 9, 1985. A single .38-caliber bullet entered the left chest of the victim and penetrated both lungs and his heart.

The record further shows that between the hours of midnight and 1:30 a.m. on October 9, 1985, the deceased, Jeffrey Peterson, and his cousin, John Flynn, drove to the 19th and Lothrop Streets area in Omaha, Nebraska. They had been asked by a friend of theirs, Gerald Kincaid, to give a message to Janelle Anzalone to either call Kincaid or come to his house because Anzalone owed Kincaid money for pills she had purchased from him. Upon their arrival, Peterson and Flynn met two black males in a blue and white Cadillac parked in front of Anzalone's residence. Flynn inquired as to the whereabouts of Anzalone and was told by the person in the driver's seat that she was not around. During the conversation Flynn was threatened by someone in the Cadillac, and threats were made also against Kincaid or the Kincaid house. Later, Flynn was able to identify only one person in the Cadillac, that being Chester Carter, a brother of the defendants. Flynn could not positively identify Victor Carter as being present in the Cadillac and admitted that it was only his speculation that the individuals at 19th and Lothrop had anything to do with the later shooting.

After this attempt to contact Anzalone, Flynn and Peterson returned to Kincaid's residence at 39th and Young Streets and told Kincaid what had occurred. Peggy Hatfield, Scott Reynolds, and Ross Little were outside the Kincaid house, working on Flynn's car.

Just before 3 a.m. Hatfield, Reynolds, and Little decided to drive to a nearby convenience store for coffee and sandwiches. The three got into Hatfield's car, which was parked facing south on 39th Street. Before they pulled away from the curb, a car came up 39th Street, going north. Hatfield testified that the car contained two or three black males and that the car slowed down as it passed Kincaid's house. The car turned at the intersection of 39th and Young, backed up, and began to drive south on 39th Street. By this time Hatfield had also begun to drive south on 39th Street. The other car was now behind Hatfield and began honking its horn, so Hatfield pulled over to the curb. The car (later described by Reynolds as a blue/light

blue-gray Buick) pulled alongside Hatfield's car at about an arm's-length distance. The passenger in the car, whom Hatfield later identified as Victor Carter, pointed a gun toward Hatfield and asked if she knew Jerry Kincaid. She replied that she did not. Victor then said something to the effect of "[d]on't come messing around in our neighborhood or with our people." Hatfield again started to drive south on 39th Street. She looked in her rearview mirror and did not see the car following her. Hatfield drove to a phone booth on 30th Street, located 10 to 15 blocks away from the Kincaid residence. Reynolds made a phone call to the Kincaid residence and was told that Peterson had just been shot.

After Peterson and Flynn had returned from 19th and Lothrop, Kincaid received two or three unpleasant phone calls from Janelle Anzalone. During the second or third phone call, it was brought to Kincaid's attention that a blue car was coming around the corner. He looked out the window and said, "That's them," and then hung up on Anzalone. Flynn testified that Kincaid said, "They just went by" and that he (Flynn) understood Kincaid to mean the Carters. Flynn decided to go across the street to his grandmother's house, where he thought it would be safe, and indicated to Peterson to come with him.

As Peterson and Flynn walked out the front door, Flynn grabbed a baseball bat, and they began to walk through the front yard. When they were in the middle of the yard, the car came around the corner, sped up, and then slammed on its brakes. Flynn threw the bat toward the vehicle, but testified he did not know whether the bat hit the vehicle. Flynn saw muzzle flashes, heard a boom, and said, "Run, Jeff; they've got guns." Flynn ran back behind Kincaid's house, looked around the corner to see if anyone was coming, and then heard footsteps which he thought would be Peterson's. Instead, it was a friend of his named William Howard Thurman, saying that Peterson had been shot. Flynn never actually saw Peterson being shot, but did later identify the vehicle involved as a silver- or grayish-colored four-door Buick.

Later that morning, the Carter automobile was located in a motel parking lot near 39th and Dodge Streets. Flynn was brought to the parking lot and identified the Carter automobile

as being the same car involved in the shooting. Reynolds also identified the car as being the same one that pulled Hatfield's car to the side of the road. The vehicle was registered to Georgia Carter, the mother of the defendants.

Meanwhile, police officers were advised that the parties had left the building and were in an alley behind the motel. Officers Strong and Thuelen went to the alley behind the motel and arrested Victor Carter, Chester Carter, and Janelle Anzalone. George Carter was arrested by another officer in a bushy area around the corner from the motel. During his arrest, officers found a .38-caliber cartridge in George Carter's pocket, and 12 additional live .38 long rounds were found lying in the shrubbery.

That morning a lineup or "show up" consisting of Chester Carter, Victor Carter, and George Carter was conducted at the Central Police Station. Flynn identified Chester as one of the persons he saw in the blue and white Cadillac earlier that evening at 19th and Lothrop Streets. Reynolds identified Victor as the passenger in the front seat of the Buick that had pulled the Hatfield car over and also identified George as being a passenger in the back seat of that car. Reynolds later testified at trial that he was mistaken in his placement of George during the lineup and that George was actually the driver of the vehicle. Ross Little, also a passenger in the Hatfield car, identified Victor as the driver of the Buick and George as the passenger in the front seat. Hatfield identified Victor as the passenger waving a gun at her, but could not identify anyone else in the vehicle.

At the trial Kincaid testified that he had seen the shooting; that the blue car had stopped near the front of his house; that the passenger door flew open and a man jumped out, shooting a gun twice; and that then the driver jumped out and started shooting a gun four or five times. Kincaid identified the passenger as Victor and the driver as George.

The first assignment of error relates to the lineup identifications by Peggy Hatfield and Scott Reynolds. The defendants contend that Hatfield and Reynolds should not have been allowed to testify as to their previous identifications because the lineup was unduly suggestive and their testimony

was hearsay. No objections were made during trial to the testimony of either Hatfield or Reynolds. Therefore, the alleged error was not preserved for this court's review.

As stated recently in *State v. Pointer*, 224 Neb. 892, 895, 402 N.W.2d 268, 271 (1987), "[I]n a criminal trial, after a pretrial hearing and order which overrules a defendant's motion to suppress his statement, the defendant must object at trial to the receipt of the statement in order to preserve the question for review on appeal." This holding was followed in *State v. Roggenkamp*, 224 Neb. 914, 402 N.W.2d 682 (1987), where we refused to consider error assigned to the admission of evidence concerning Intoxilyzer test results because no objection was made to the evidence at the trial.

The same rationale applies in this case. No objection was made to prosecution inquiries regarding the lineup.

> As dictated by the Nebraska Evidence Rules, error may not be predicated on a ruling which admits evidence unless a substantial right of a party is affected and a timely objection appears of record, stating the specific ground of objection, if a specific ground was not apparent from the context.

*Roggenkamp, supra* at 920, 402 N.W.2d at 687.

The second assignment of error concerns the trial court's refusal to grant the request for a continuance. This court will not reverse an order granting or refusing a continuance except where there has been an abuse of sound legal discretion by the lower court. *In re Interest of C.G.C.S.*, 225 Neb. 605, 407 N.W.2d 196 (1987); *State v. Mecum*, 225 Neb. 293, 404 N.W.2d 431 (1987); *State v. Donnelson*, 225 Neb. 41, 402 N.W.2d 302 (1987).

Counsel for the defendants failed to comply with Neb. Rev. Stat. § 25-1148 (Reissue 1985), which provides that an application for continuance shall be by written motion and supported by affidavits setting forth the facts upon which the continuance is requested.

A failure to comply with § 25-1148 is relevant as to whether the trial court abused its discretion. In *Metschke v. Department of Motor Vehicles*, 186 Neb. 197, 200, 181 N.W.2d 843, 845 (1970), *overruled on other grounds Mackey v. Director of*

*Department of Motor Vehicles*, 194 Neb. 707, 235 N.W.2d 394 (1975), this court stated: "In the absence of a showing in conformance with section 25-1148, R.R.S. 1943, it is not error for the trial court to refuse to grant a continuance." In that case we found no abuse of discretion in denying the appellant's oral motion for a continuance (to secure additional witnesses) because there was no showing made as to what evidence would be procured by calling additional witnesses, no showing of materiality, and no showing of any other matters pertinent in support of the motion.

A similar finding was made in *Stastny v. Tachovsky*, 178 Neb. 109, 132 N.W.2d 317 (1964), holding there was no error in denying a motion for a continuance where an oral application was made the morning of the trial, no written application was made, and the parties seeking the continuance had sufficient time to prepare for trial. See, also, *Vlcek v. Sutton*, 201 Neb. 555, 270 N.W.2d 906 (1978).

In the present case, no written application was made, and no affidavits were filed to support a claim of prejudice if the continuance were not allowed. The defendants base their request on the fact that the prosecution witness Kincaid changed his previous statement and claimed to be an eyewitness to the shooting. The record shows that the defense counsel learned of the changed statement approximately 2 weeks before the start of the trial, they were given copies of the new statement, and they had full opportunity to cross-examine the witness at trial. These facts show there was no abuse of discretion in overruling the motion for a continuance.

In their third assignment of error, the defendants contend the trial court erred in overruling their pleas in abatement because the evidence adduced at the preliminary hearing was not sufficient to bind them over.

Any error in ruling on a plea in abatement is cured by a subsequent finding at trial of guilt beyond a reasonable doubt. *State v. Jacobs, ante* p. 184, 410 N.W.2d 468 (1987); *State v. Schreck, ante* p. 172, 409 N.W.2d 624 (1987); *State v. Baker*, 224 Neb. 130, 395 N.W.2d 766 (1986).

At the trial, the State was allowed to introduce the testimony of Ross Little received at the preliminary hearing. The

defendants' fourth assignment of error is that the trial court erred in finding that Little was unavailable as a witness.

On March 28 or 29, 1986, Officer James C. Wilson of the Omaha Police Division was instructed to locate Little for the trial. Officer Wilson learned that Little was living in Oregon, contacted the local police in Oregon, and obtained the address and phone number of Little's father. Officer Wilson spoke with the father and left a message to have Little call him. One or two days later, Little returned the call and was told that he was needed as a witness. Little was told that his transportation to Omaha would be paid.

While arranging for an airline flight, Officer Wilson discovered an outstanding felony warrant for Little. Officer Wilson then called Little and told him about the warrant. Little was aware of this warrant, but was willing to return to Nebraska anyway.

Sometime later Officer Wilson told Little's father that his son would be arrested when he came back to Nebraska. Officer Wilson then contacted the local police in Oregon and requested that they arrest Little on a fugitive charge. As of April 4, 1986, the day Officer Wilson testified, Little had not been found.

Neb. Rev. Stat. § 27-804(1)(e) (Reissue 1985) provides that a witness is unavailable if "the proponent of his statement has been unable to procure his attendance by process or other reasonable means." A witness is not unavailable unless the prosecutorial authorities have made a good faith effort to obtain the witness' presence at trial. *Barber v. Page*, 390 U.S. 719, 88 S. Ct. 1318, 20 L. Ed. 2d 255 (1968); *State v. Bothwell*, 218 Neb. 395, 355 N.W.2d 506 (1984).

The issue here is whether the prosecution, through the efforts of Officer Wilson, made a good faith effort. Officer Wilson first tried to bring back Little voluntarily. When questioned as to why no attempt was made to immediately arrest Little, and instead giving him a chance to come back on his own, Officer Wilson testified, "My information is it would be much easier to get him back here willingly rather than having to extradite him. It's a long process."

It is within the sound discretion of the trial court whether unavailability has been shown. Absent a showing of an abuse of

discretion, the trial court's decision will be upheld. *State v. Wiley*, 223 Neb. 835, 394 N.W.2d 641 (1986); *State v. Bothwell*, 218 Neb. 395, 355 N.W.2d 506 (1984).

In this case, the admission of Little's testimony from the preliminary hearing was at most harmless error. "If properly admitted evidence exists to establish that which improperly admitted evidence also establishes, the error in receiving the inadmissible evidence is not grounds for reversal." *State v. Klingelhoefer*, 222 Neb. 219, 224, 382 N.W.2d 366, 370 (1986); *State v. Hunt*, 220 Neb. 707, 371 N.W.2d 708 (1985), *overruled on other grounds State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986).

Little's testimony at the preliminary hearing was that he was a passenger in a car driven by Peggy Hatfield, that a blue car came up from behind and flashed its lights, and that Hatfield stopped and pulled over. One of the occupants of the car asked if they knew Jerry Kincaid, to which they responded they did not. Little's testimony differed from the testimony of the other witnesses only in that at the lineup he placed Victor as the driver and George as the passenger. The record shows that the testimony of Peggy Hatfield and Scott Reynolds established basically the same facts as the testimony of Little. Any error in the ruling regarding unavailability was at most harmless error.

The defendants' fifth assignment of error is that the trial was tainted with racial prejudice. The record does not support this contention.

We have examined the record concerning each of the evidentiary rulings complained of and find that they were not erroneous or not prejudicial. The admission or exclusion of evidence is a matter within the sound discretion of the trial court and will be upheld absent an abuse of discretion. *State v. Ryan, ante* p. 59, 409 N.W.2d 579 (1987); *State v. Wilson*, 225 Neb. 466, 406 N.W.2d 123 (1987).

The final assignment of error is that the trial court erred in granting the State's motion in limine to suppress evidence of an incident a few months prior to the shooting, where John Flynn threatened a neighbor with a gun. The defendants contend the evidence should have been admitted to impeach Flynn's testimony that he did not own a gun. The trial court refused to

admit the evidence because it related to a collateral matter. We find no abuse of discretion.

The judgments are affirmed.

AFFIRMED.