STATE OF NEBRASKA, APPELLEE, V. WILLIAM M. KATZMAN, APPELLANT.

424 N.W.2d 852

Filed June 17, 1988.   No. 87-573.

Gregory M. Schatz of Stave, Coffey, Swenson, Jansen, & Schatz, P.C., for appellant.

Robert M. Spire, Attorney General, and William L. Howland, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

The defendant, William M. Katzman, was found guilty by a jury in the district court of five counts of false swearing to an initiative or referendum petition contrary to the provisions of Neb. Rev. Stat. § 32-713 (Reissue 1984). He assigns as error that (1) the statutory scheme under which he was convicted is unconstitutionally vague and overbroad; (2) his equal protection rights had been denied because of "arbitrary selection" of him by the prosecutor in filing charges; (3) his motion for a continuance was denied; (4) certain evidence was incorrectly admitted; (5) the evidence was insufficient to support a conviction; and (6) improper terms of the conditions of probation were imposed. We affirm.

Katzman was a member of Lottery Consultants of Nebraska, Inc., in March of 1986, which organization was retained to aid in a petition drive to place the issue of a statewide lottery on the general election ballot in November of 1986. It was required by law that circulators of the petitions be registered voters of the county in which the petition signers resided. In addition, it was required by Neb. Rev. Stat. § 32-705 (Cum. Supp. 1986) that the circulator of each petition sign an affidavit swearing to the authenticity of each signature obtained on a petition. Section 32-713 provided that any person "who shall falsely swear to any signature upon any such petition" shall be guilty of a Class IV felony.

In spite of the claim of insufficiency of the evidence, there seems to be little dispute as to the pertinent facts. Katzman himself testified that he "whited out" the name of the county on the top of petitions which had the wrong county written in. Another witness testified that Katzman was also whiting out circulator signatures and that he had asked one of his (Katzman's) employees to sign some Douglas County petitions since the employee was a registered voter in Douglas County. Katzman himself testified that he re-signed petitions on the circulator line after the previous circulator's signature was whited out, because the previous circulator was not a registered voter in the county and he was.

The activities that led to the charges against Katzman took place on July 3, 1986, the day of the deadline for the return of the petitions. On that day, Katzman instructed two of his employees to take some unsigned or "whited out" petitions to one of H&Z Vending's clients, Jane Janssen, a bar owner registered as a voter in Sarpy County, so that she, the bar owner, could sign as a circulator. H&Z Vending was a business involved with the ownership and distribution of video lottery machines, in which Katzman had an interest. It was these unlawfully signed petitions which led to the filing of five counts of false swearing against Katzman.

The district court found that certain provisions of the statutes previously mentioned were unconstitutional: the requirement that circulators swear that they are registered *and* qualified voters; the provision that requires circulators to swear "that each petitioner when he or she signed this petition was a legal and qualified voter of the state and county and qualified to sign the same"; and the provision prohibiting the payment of circulators. However, the court held that these unconstitutional provisions were severable and that the section of the statute which was the gravamen of the State's complaint, namely, the requirement that a circulator swear that the petition signers signed in his presence, was constitutionally sound. Accordingly, the trial court, prior to trial, had overruled Katzman's motion to quash the information against him, and, following the conviction, the court also overruled the motion for a new trial and the motion in arrest of judgment.

In our review of this case, we are governed by the following general rules of law:

The granting or refusal of a motion for new trial is left to the sound discretion of the trial court, and in the absence of an abuse of that discretion, the determination will not be disturbed on appeal. *State v. Cottingham*, 226 Neb. 270, 410 N.W.2d 498 (1987).

On a defendant's motion to dismiss, the State is entitled to have all its relevant evidence accepted or treated as true, every controverted fact as favorably resolved for the State, and every beneficial inference reasonably deducible from the evidence. *State v. Lane*, 227 Neb. 687, 419 N.W.2d 666 (1988).

In a criminal case a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged, or evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *Id.*

This court will not reverse an order granting or refusing a continuance except where there has been an abuse of discretion by the trial court. *State v. Carter*, 226 Neb. 636, 413 N.W.2d 901 (1987).

It is within the court's discretion to admit or exclude evidence, and such rulings on the evidence will be upheld upon appeal absent an abuse of discretion. *State v. Lenz*, 227 Neb. 692, 419 N.W.2d 670 (1988).

A sentence imposed within the limits prescribed by the statute in question will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Costanzo*, 227 Neb. 616, 419 N.W.2d 156 (1988).

With respect to the defendant's first assignment of error, i.e., that the statutory scheme under which he was convicted is unconstitutionally vague and overbroad, all of defendant's contentions in that regard are considered, discussed, and decided adversely to the defendant in *State v. Monastero, ante* p. 818, 424 N.W.2d 837 (1988), decided today.

Katzman's pretrial motion to dismiss the information on the basis of a violation of equal protection rights because of alleged selective prosecution was denied. He insists that the evidence disclosed that the prosecutor's motive in charging Katzman was

Katzman's video lottery game business interests. The State simply argues that Katzman was instrumental in the petition drive and that the prosecutor's selection of Katzman for prosecution was therefore warranted.

The general rule regarding prosecutorial discretion in law enforcement is that, unless there is proof that a particular prosecution was motivated by an unjustifiable standard based, for example, on race or religion, the use of such discretion does not violate constitutional protections. *State v. Sprague*, 213 Neb. 581, 330 N.W.2d 739 (1983); *State v. Bartlett*, 210 Neb. 886, 317 N.W.2d 102 (1982); *State v. Long*, 206 Neb. 446, 293 N.W.2d 391 (1980). This means that in order to establish arbitrary discrimination inimical to constitutional equality, there must be more than an intentional and repeated failure to enforce legislation against others as it is sought to be enforced against the person claiming discrimination. *Long, supra*; *Arrigo v. City of Lincoln*, 154 Neb. 537, 48 N.W.2d 643 (1951). Also, there must be more than a showing that a law or ordinance has not been enforced against others and that it is sought to be enforced against the person claiming discrimination. *Long, supra*; *City of Omaha v. Lewis & Smith Drug Co., Inc.*, 156 Neb. 650, 57 N.W.2d 269 (1953). To support a defense of selective or discriminatory prosecution, the defendant must show not only that others similarly situated have not been prosecuted but that the selection of the defendant for prosecution has been invidious or in bad faith, based upon considerations such as race, religion, or the desire to prevent his exercise of his constitutional rights. *Long, supra*; *United States v. Berrios*, 501 F.2d 1207 (2d Cir. 1974).

Katzman has failed to show, first of all, that others who were *similarly situated* were not prosecuted. Katzman was one of the "ringleaders" of the petition drive. He was responsible for the formation of Lottery Consultants of Nebraska, Inc., which was in turn responsible for the funding of the petition drive; the drive was coordinated from his business office in Omaha; much of the illegal whiting out and re-signing was done in his presence, at his business address, and with his cooperation; he instructed the temporary-help circulators to sign petitions which they had not circulated or to refrain from signing

petitions which they had circulated; and he personally solicited many businesses to have petitions available for their customers to sign. Katzman was an instrumental force in the petition drive. There is no evidence that he was the only leader of the drive who was prosecuted; the evidence is to the contrary.

There were, of course, many, many others who were involved in the petition drive in some manner and were not prosecuted. However, the majority of those who were involved to the extent that Katzman was *were* charged (e.g., Labedz, Pappas, McCullough, etc.). Thus, Katzman has failed to meet the preliminary step of showing that those who were similarly situated were not equally treated.

Moreover, Katzman has not shown that the prosecutor's decision was based on an impermissibly discriminatory reason. Race, religion, nationality, sex, and political affiliation were obviously not factors in the decision to prosecute. Katzman argues instead that it was probable that he was "singled out" for prosecution because of his involvement with the video lottery game business. He asserts that this is an impermissible basis for prosecution, as it interferes with his constitutional right to conduct his business.

There has been no showing that Katzman was "singled out" because of his video lottery business. Although the prosecution may have been aware of Katzman's business activities, there was simply no evidence presented at the hearing that the charges against Katzman were brought to interfere with his business. A discriminatory purpose will not be presumed; there must be a showing of clear and intentional discrimination. *State v. Long, supra*; *Snowden v. Hughes*, 321 U.S. 1, 64 S. Ct. 397, 88 L. Ed. 497 (1944). This assignment of error is without merit.

Katzman complains that he was first allowed to see exhibits 1 and 2 on March 5, 1987, a little less than 2 weeks before trial. These exhibits consisted of the investigative reports made by the Nebraska State Patrol in the case. Because of the large amount of material contained in those exhibits, the defense asked that the trial be continued so that it would have adequate time to look at the reports.

Although the volumes are large, they easily could have been reviewed in the days remaining before trial. Much of the

material contained in the exhibits consisted of petitions, administrative data forms, police reports, and other documents which do not require much reading. Moreover, there has been no showing how the information in the exhibits could have helped in the defense at trial; at trial, Katzman essentially admitted his participation in the illegal activities. This court will not reverse an order refusing a continuance except where there has been an abuse of discretion by the lower court. *State v. Carter*, 226 Neb. 636, 413 N.W.2d 901 (1987). It was not an abuse of discretion for the trial court to deny the motion for continuance.

The defendant complains of the admission by the trial court of exhibits 29 through 36. These were petitions signed by Tyler Anderson as circulator. Anderson, an employee of H&Z Vending, had been asked to sign the petitions by Katzman. Anderson signed the petitions, some of which had been whited out on the circulator line, because Katzman needed a registered voter of Douglas County to sign as circulator of those Douglas County petitions.

The exhibits were allowed by the court as bearing on Katzman's credibility and his knowledge of the falsity of the petitions in issue. The State also argued that the exhibits were admissible to show "a common scheme or plan, so close in time or similar in nature that it's relevant." The defense maintained that, although the petitions may have been relevant, the probative value was outweighed by the possibility of prejudice.

It is within the court's discretion to admit or exclude evidence, and such rulings on the evidence will be upheld on appeal absent an abuse of discretion. *State v. Lenz*, 227 Neb. 692, 419 N.W.2d 670 (1988). There was no abuse of discretion in the admission of exhibits 29 through 36.

The exhibits were indeed prejudicial, as the defense argues. However, the exhibits were also of such probative value that their probative value outweighed their potential prejudicial effect. As the record reveals, the circumstances which led to Katzman's decision to ask Anderson to sign petitions were very similar to the circumstances surrounding Katzman's request to have Janssen sign petitions; i.e., Katzman was trying to get as many valid petitioner signatures as possible in the last few hours

of the drive, and sought registered voters of the petition signers' county in order to "validate" those petitions. If a distinctive pattern or procedure similar to the charged crime is found in the separate act, the separate act may have probative value in determining the guilt of the defendant. *State v. Craig*, 219 Neb. 70, 361 N.W.2d 206 (1985). Moreover, " 'it is a matter left to the discretion of the trial court as to whether the prior offenses are sufficiently similar to the one charged in the case on trial so that evidence thereof has probative value.' " (Emphasis omitted.) *State v. Keithley*, 218 Neb. 707, 709-10, 358 N.W.2d 761, 763 (1984). Although the defense is correct in arguing that *unfairly* prejudicial evidence, even if otherwise admissible, may not be admitted, nevertheless, " '[W]here the highly prejudicial evidence also has great probative worth and plays a crucial role in the prosecutor's case, exclusion of the evidence may destroy his case and result in an unjustified acquittal.' " *State v. Ellis*, 208 Neb. 379, 393, 303 N.W.2d 741, 750 (1981).

Whether the exhibits were admitted for the purpose of showing Katzman's knowledge or credibility, or whether they were admitted to show a common plan, motive, etc., the fact remains that the exhibits were highly relevant and of great probative value. Any prejudice which resulted from the admission of these exhibits was outweighed by their probative value. The lower court did not abuse its discretion in admitting the exhibits.

The argument of Katzman that the evidence was insufficient to support the verdicts is wholly without merit.

At the outset, it is important to note that on a defendant's motion to dismiss, the State is entitled to have all its relevant evidence accepted or treated as true, every controverted fact as favorably resolved for the State, and every beneficial inference reasonably deducible from the evidence. Furthermore, a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged, or evidence is so doubtful in character, or lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. Lane*, 227 Neb. 687, 419 N.W.2d 666 (1988).

Katzman was convicted of "false swearing" in connection with his activities in aiding and abetting the signing of petitions

by Jane Janssen. Katzman had Janssen sign five petitions as circulator, although he knew that she had not in fact circulated the petitions and was thereby falsely signing them. He now argues that there was no evidence to show that he knew that Janssen had not actually circulated the petitions in question; that is, that he did not have the requisite knowledge of falsity to sustain his conviction.

The defense maintains that it is conceivable that Katzman believed that Janssen had actually circulated those five petitions, and that she therefore was not falsely swearing to them.

The evidence contradicts the defense's argument. Katzman was well aware that petitions were being whited out and re-signed on the circulator line; he himself participated in this activity. There was evidence that he had asked Tyler Anderson to sign petitions which Anderson had not circulated, merely because Anderson was registered in the proper county. There was also evidence that Katzman had instructed the temporary-help circulators not to sign certain petitions and that he would "take care of it" later. Finally, the petitions themselves were sufficient to alert Katzman that they had not been circulated by Janssen but, rather, were to be *re*-signed by her. Exhibits 7 and 8 obviously had been whited out over a previous circulator's signature.

The evidence is sufficient to sustain the finding of the jury that Katzman aided and abetted Janssen in falsely swearing to the petition signatures.

Finally, it is contended, in effect, that the sentence imposed by the court was without authorization.

In sentencing Katzman, the court ordered him to serve 2 years on probation for each count, to run concurrently. The conditions of probation included a fine and community service work, as well as a provision that Katzman "shall not act as a circulator of any initiative or referendum petition during the period of probation, nor shall he actively promote the circulation of any such petition . . . ." The court expressly did *not* restrict Katzman's right to sign any initiative or referendum petition.

Section 32-713 provides that a person who is found guilty of

violating Neb. Rev. Stat. §§ 32-702 to 32-713 (Reissue 1984 & Cum. Supp. 1986) shall be guilty of a Class IV felony, punishable by "Maximum-5 years imprisonment, or ten thousand dollars fine, or both. Minimum-none." Neb. Rev. Stat. § 28-105 (Reissue 1985). In addition, § 32-705 provides a warning which suggests that violations of §§ 32-702 to 32-713 be punished by a fine not exceeding $500, by imprisonment not exceeding 2 years, or both. In either case, the 2-year probation period ordered by the court falls within the recommended sentencing guidelines. A sentence imposed within the limits prescribed by the statute in question will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Costanzo*, 227 Neb. 616, 419 N.W.2d 156 (1988).

However, Katzman argues that the condition of his probation restricting his circulation activities does not comply with Neb. Rev. Stat. § 29-2262 (Cum. Supp. 1986). Section 29-2262 states:

> (1) When a court sentences an offender to probation, it shall attach such reasonable conditions as it deems necessary or likely to insure that the offender will lead a law-abiding life.

> (2) The court, as a condition of its sentence, may require the offender:

> . . . .

> (p) To satisfy any other conditions reasonably related to the rehabilitation of the offender.

Thus, it is within the court's power to restrict Katzman's activities by imposing any reasonable condition designed to promote his respect for the law and to facilitate his rehabilitation.

The judgment of the district court is affirmed.

AFFIRMED.