STATE OF NEBRASKA, APPELLEE, V. GEORGE E. CARTER AND
VICTOR L. CARTER, APPELLANTS.

489 N.W.2d 846

Filed October 2, 1992.   No. S-90-416.

Gregory M. Schatz, of Stave, Coffey, Swenson, Jansen & Schatz, P.C., for appellants.

Don Stenberg, Attorney General, Donald A. Kohtz, and, on brief, Susan M. Ugai for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

The defendants, George E. Carter and Victor L. Carter, were charged in separate informations with first degree murder and use of a firearm in the commission of a felony. The cases were consolidated for trial in 1986, and the jury returned verdicts of guilty in both cases. The defendants were sentenced to life imprisonment on the murder counts and to imprisonment for 10 years on the use of a firearm counts. The judgments were affirmed in *State v. Carter*, 226 Neb. 636, 413 N.W.2d 901 (1987) (*Carter I*).

On June 8, 1989, the defendants filed a joint motion for postconviction relief. After an evidential hearing, the trial court denied postconviction relief. From that judgment the defendants have appealed. The defendants contend that the trial court erred in failing to find that they are entitled to postconviction relief because of the changed testimony of the witness Gerald Kincaid and because they received ineffective assistance of counsel during their trial and original appeal.

> "In a proceeding under the Nebraska Postconviction Act [Neb. Rev. Stat. § 29-3001 et seq. (Reissue 1989)], the movant, in custody under sentence, must allege facts which, if proved, constitute a denial or violation of the movant's rights under the Nebraska or federal Constitution, causing the judgment against the movant to be void . . . ."

*State v. White*, 238 Neb. 840, 845, 472 N.W.2d 720, 724 (1991), quoting *State v. Start*, 229 Neb. 575, 427 N.W.2d 800 (1988).

A defendant seeking postconviction relief has the burden of establishing the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Blank*, 239 Neb. 188, 474 N.W.2d 689 (1991); *State v. Keithley*, 238 Neb. 966, 473 N.W.2d 129 (1991); *State v. Whitmore*, 238 Neb. 125, 469 N.W.2d 527 (1991). Furthermore, it is the postconviction judge who, as the trier of

fact, resolves conflicts in the evidence and questions of fact, including the credibility and weight to be given the testimony of a witness. *State v. Joubert*, 235 Neb. 230, 455 N.W.2d 117 (1990); *State v. Costanzo*, 235 Neb. 126, 454 N.W.2d 283 (1990).

In their first assignment of error, the defendants claim that the trial court erred in failing to find that the credibility of Kincaid's trial testimony was so doubtful on its face that it deprived them of a fair trial. They base this claim on the fact that Kincaid changed his statement to police approximately 2 weeks prior to their original 1986 trial, see *Carter I*, and upon testimony at the hearing on the postconviction motion.

At the postconviction hearing, Dorothy Kincaid, Kincaid's mother, testified that within 6 months after the Carters' original trial, Kincaid told her that he had lied when he positively identified the Carters as the persons involved in the murder for which they were convicted. According to Dorothy Kincaid, Kincaid told her that he identified the Carters from the pictures which the prosecutor had shown him and that he did so because he thought that they were the murderers. Kincaid's father, Bernard Kincaid, testified that he was present when Kincaid made such statements to his mother.

Barbara Keithley testified at the postconviction hearing that she was a witness to the shooting and that the victim was shot by Kincaid. According to Keithley, Kincaid fired two shots from inside his house, and those were the only two shots which were fired. While Keithley testified that she could see that Kincaid fired the shots with a gun, she could not describe the gun and could not tell whether the gun was a handgun, a long-barreled rifle, or a shotgun. Keithley also testified that the shooting occurred between 12:30 and 1 a.m. on October 9, 1985.

At the time that she testified, Keithley was serving a sentence for felony theft by deception. She testified that she did not contact the police regarding the shooting because she "[does not] like dealing with anything that has to do with the police." According to Keithley, when she met the Carters' sister, Sherry Carter, in the Douglas County jail, she told Sherry Carter that she had witnessed the shooting, and the Carters' postconviction counsel eventually contacted Keithley.

Kincaid testified twice at the postconviction hearing. On February 26, 1990, Kincaid testified that despite his testimony at the trial, see *Carter I*, he was not able to identify the Carters as the persons involved in the shooting and that he had lied at the Carters' trial. However, when recalled as a witness on March 2, 1990, Kincaid recanted his February 26 testimony and testified that he had been "threatened with a knife" and "knocked around a few times" by the Carters' cousin Roy Ellis. Kincaid was threatened when both he and Ellis were incarcerated at the Omaha Correctional Center. The assault and threats by Ellis against Kincaid are documented in a Department of Correctional Services disciplinary misconduct report. The report indicates that Ellis threatened Kincaid in order to coerce him to change his testimony in the present case.

In his March 2, 1990, testimony, Kincaid testified, as he had at the defendants' trial, that the defendants were the participants in the homicide for which they were convicted. According to Kincaid, the reason for his changed testimony on February 26, 1990, was his fear that his "life was in jeopardy at the penitentiary."

It cannot be said that the trial court was clearly wrong in denying the defendants' motion for postconviction relief based upon the changed testimony of Kincaid. With respect to the testimony of Keithley, the district court could easily have found an absence of credibility in her testimony. While Keithley's testimony may be suspect in view of her conviction for theft by deception, her testimony also conflicts with the evidence at the defendants' original trial. Keithley, for instance, testified that only two shots were fired, while numerous trial witnesses testified that up to eight shots were fired. Keithley also testified that the shooting occurred between 12:30 and 1 a.m. on October 9, 1985, although the trial testimony establishes that the shooting occurred at approximately 3 a.m. or shortly thereafter.

In addition, while she testified that she saw Kincaid fire a weapon from inside his residence, Keithley could not state whether Kincaid fired a handgun or a long-barreled weapon. Furthermore, the testimony of trial witnesses shows that immediately before the shooting began, Kincaid did not remain

in the house and fire a weapon, but instead grabbed his 3- or 4-year-old son and hustled him to safety in the basement of the residence. Kincaid then went out a basement door and saw the defendants firing handguns from the vicinity of their vehicle.

While Kincaid's trial testimony did change when he first testified at the hearing on the motion for postconviction relief, the record shows that Kincaid had changed his testimony only because he had been threatened by one of the appellants' relatives. Furthermore, despite the statement which Kincaid made to his mother, he testified under oath, at both the trial and the postconviction hearing, that the Carters were the persons who perpetrated the victim's murder. The issue of Kincaid's credibility was one to be decided by the jury at the defendants' 1986 trial, and the appellants cannot use their postconviction motion to relitigate that issue. See *State v. Ferrell*, 230 Neb. 958, 434 N.W.2d 331 (1989) (a motion for postconviction relief may not be used as a substitute for an appeal or to receive a further review of issues already litigated).

The appellants have failed to show that they are entitled to have their convictions set aside due to the changed testimony of Kincaid.

In their second assignment of error, the appellants claim that they received ineffective assistance of counsel at their trial and on the original appeal, and they discuss 16 instances in which their counsel was allegedly ineffective. When the defendant in a postconviction proceeding alleges a violation of his constitutional right to effective assistance of counsel as a basis for relief, the standard for determining the propriety of the claim is whether the attorney, in representing the accused, performed at least as well as a lawyer with ordinary training and skill in the criminal law in the area. *State v. Blank*, 239 Neb. 188, 474 N.W.2d 689 (1991). To sustain a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution and thereby obtain reversal of a defendant's conviction, the defendant must show that counsel's performance was deficient and that such deficient performance prejudiced the defense. *State v. Blank, supra*; *State v. White*, 238 Neb. 840, 472 N.W.2d 720 (1991).

A showing of prejudice to the defense requires a

demonstration of reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different is a probability sufficient to undermine confidence in the outcome. *State v. Blank, supra*; *State v. Salas*, 237 Neb. 546, 466 N.W.2d 790 (1991).

In contending that they were denied effective assistance of counsel, the appellants first cite their attorneys' failure to object to the in-court identification of the appellants by Peggy Hatfield and Scott Reynolds. See *Carter I*. However, despite their failure to object at trial, appellants' trial counsel did move to suppress the lineup identification of the appellants by Hatfield and Reynolds. The district court conducted a pretrial hearing with respect to those motions and denied the motions.

In determining the correctness of a trial court's ruling on a motion to suppress, an appellate court will uphold the trial court's findings of fact unless those findings are clearly erroneous. In making this determination, this court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that the trial court observed the witnesses testifying in regard to such motion. *State v. Sanders*, 235 Neb. 183, 455 N.W.2d 108 (1990).

An identification procedure is constitutionally invalid only when it is so unnecessarily suggestive and conducive to an irreparably mistaken identification that a defendant is denied due process of law. The initial inquiry is whether an identification procedure was unduly suggestive. A determination of impermissible suggestiveness is based on the totality of the circumstances. *Id*. Furthermore, even if there have been impermissible pretrial suggestions as to an accused's identity, in-court identification may be received when it is independent of and untainted by the impermissible identification procedures. *State v. Tyrrell*, 234 Neb. 901, 453 N.W.2d 104 (1990).

In the present case, there is no evidence in the record to show that the lineup identification of the defendants by Hatfield and Reynolds was impermissibly suggestive. Instead, the record

shows that Hatfield's and Reynolds' identification of the defendants was based upon the witnesses' recollections of their encounter with the defendants when Victor Carter pointed a handgun toward Hatfield and her vehicle. Consequently, the trial court, in the original trial, properly overruled the defendants' motions to suppress the lineup identification. Because Hatfield's and Reynolds' identification of the defendants was proper, it cannot be said that the defendants received ineffective assistance of counsel because of their attorneys' failure to object to such identification.

The defendants next contend that the counsel they received was ineffective because their attorneys failed to object to evidence stemming from the arrest and search of the appellants. In their brief, the defendants do not address any alleged constitutional infirmity of the arrest and search of George Carter. However, we note that in their motion to vacate their convictions, the appellants state that an arrest warrant was outstanding for George Carter at the time he was arrested and that "George Carter was arrested by Officer Clyde Nutsch after he was found [a short time after Victor Carter was arrested] alledgely [sic] hiding in some bushes . . . in an area close to where Victor and Chester Carter and Ms. [Janelle] Anzalone had already been arrested." As stated previously, a defendant seeking postconviction relief has the burden of establishing the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Blank, supra*; *State v. Keithley*, 238 Neb. 966, 473 N.W.2d 129 (1991); *State v. Whitmore*, 238 Neb. 125, 469 N.W.2d 527 (1991). There is no indication in the record before us that the police unlawfully arrested George Carter, and therefore there is no showing that the appellants were in any way prejudiced by their attorneys' failure to challenge that arrest or the search incident to that arrest.

The appellants also challenge the arrest and search of Victor Carter. A report prepared by Jeffrey Thuelen, the arresting officer, shows that he arrested Victor Carter, Chester Carter, who was not charged, and one other unnamed person who is described as a white female. While the report also indicates that Officer Thuelen made the arrests because the white female

matched the description of one of the suspects in the shooting, the appellants argue that there were no white female suspects.

Contrary to the argument of the appellants, one of the witnesses who was at the scene of the shooting when it occurred had informed police that Anzalone may have accompanied the appellants in the vehicle they were driving at the time of the shooting. Furthermore, the record shows that Anzalone was arrested when the Carters were arrested. Consequently, it is apparent that Anzalone is the white female whom Officer Thuelen referred to in his report. Officer Thuelen's report also shows that not only did the white female match a description of one of the suspects, but that the appellants were arrested near a motel and that Officer Thuelen had observed a vehicle in the motel parking lot which matched the description of the vehicle thought to have been involved in the shooting. Furthermore, the police had information which would lead them to believe that at least two black males were involved in the shooting, and Officer Thuelen had been informed that at least three black males had been seen fleeing from the motel near the site where the appellants were arrested.

Under these circumstances, Officer Thuelen had probable cause to arrest and search Victor Carter and his two companions. See, e.g., *State v. Kimminau*, 240 Neb. 176, 481 N.W.2d 183 (1992); *State v. Roach*, 234 Neb. 620, 452 N.W.2d 262 (1990). Consequently, the appellants were not prejudiced by their attorneys' failure to challenge the constitutional validity of the arrest and search of Victor Carter.

Appellants next contend that the performance of their attorneys was deficient in that their attorneys failed to make written application for a continuance after learning that Kincaid would appear as an eyewitness to the shooting at the original trial. See *Carter I*. While the merit of this contention is, for the most part, adequately addressed in the disposition of a similar assignment of error which was raised on appeal in *Carter I*, we noted in that opinion that the appellants' attorneys' failure to file written applications for a continuance was a relevant factor in determining whether the trial court abused its discretion in denying a motion for continuance. Appellants now argue that a written motion for continuance

should have been filed and speculate that this court would have found the trial court's denial of a continuance to have been an abuse of discretion if such written motions had been filed.

As we stated in *Carter I*:

> The defendants base their request on the fact that the prosecution witness Kincaid changed his previous statement and claimed to be an eyewitness to the shooting. The record shows that the defense counsel learned of the changed statement approximately 2 weeks before the start of the trial, they were given copies of the new statement, and they had full opportunity to cross-examine the witness at trial. These facts show there was no abuse of discretion in overruling the motion for a continuance.

226 Neb. at 642, 413 N.W.2d at 905-06. See, also, *State v. Bradley*, 236 Neb. 371, 461 N.W.2d 524 (1990) (the denial of a request for a continuance is not an abuse of discretion unless it clearly appears that the movant will suffer prejudice as a result of the denial).

Despite this, the defendants contend that if a written motion had been filed and a continuance granted, they would have discovered the existence of another witness, Keithley, who testified at the postconviction hearing. However, as discussed previously in this opinion, given the testimony of other witnesses and her questionable credibility, the defendants have failed to show that there is a reasonable probability that the testimony of Keithley would have had any effect upon the outcome of the trial.

The defendants also charge that their attorneys were deficient in failing to adequately question several witnesses, including Michaela Earlywine, Officer Robert Vondrasek, and Dr. Jerry Jones. The appellants argue that by more fully questioning these witnesses, their attorneys could have created grounds for a self-defense instruction, or established grounds for a second degree murder or manslaughter conviction rather than a first degree murder conviction. However, as evidenced by their motion for postconviction relief, the defendants maintain that they were not involved in the murder for which they were convicted. Consequently, such questioning of these witnesses would have contradicted the defendants' theory of

defense and the grounds underlying their motion for postconviction relief. The appellants cannot credibly argue that they were not involved in the victim's murder and at the same time argue that their trial counsel was deficient in failing to elicit evidence to show that they were acting in self-defense when they shot and killed the victim.

The decision to call, or not to call, a particular witness, made by counsel as a matter of trial strategy, even if that choice proves ineffective, will not, without more, sustain a finding of ineffectiveness of counsel. *State v. Ellefson*, 231 Neb. 120, 435 N.W.2d 653 (1989). A similar rule applies here with respect to the attorneys' decision not to attempt to show that the appellants were acting in self-defense.

Furthermore, any contention that the appellants were acting in self-defense when they shot the victim is unsupported by the record before us. See *State v. Allison*, 238 Neb. 142, 469 N.W.2d 360 (1991). Thus, the defendants' attorneys were not deficient in their questioning of Earlywine, Officer Vondrasek, or Dr. Jones.

The defendants next argue that they received ineffective assistance of counsel in that their attorneys failed to object to hearsay testimony within the preliminary hearing testimony of Ross Little which was admitted at trial. In *Carter I*, we found that the trial court had not committed reversible error in admitting Little's preliminary hearing testimony. However, the defendants now argue that their attorneys should have objected to a statement within the preliminary hearing testimony that Reynolds had told Little that the defendants had guns and were looking for Kincaid.

Both Reynolds and Hatfield testified at the trial that they had encountered the defendants prior to the shooting, and this testimony duplicated the hearsay testimony of Little. Consequently, even assuming that the defendants' counsel was deficient in failing to object to such testimony, this failure could not have resulted in any prejudice to the defendants. See *State v. Jones*, 237 Neb. 920, 468 N.W.2d 120 (1991) (admission of hearsay testimony was harmless where the same fact was established by other admissible evidence).

The defendants next claim that they received ineffective

assistance of counsel because their attorneys did not challenge the admissibility of 12 ammunition cartridges which were found in the immediate vicinity of George Carter when he was arrested. These cartridges were similar to another cartridge which was found upon the person of George Carter when he was arrested. The crux of the appellants' argument is that because the bullets encased in the cartridges found near George Carter did not match either the type of bullet recovered from the victim, a copper encased bullet, or another type of bullet which was recovered near the scene of the shooting, a metal point bullet, their attorneys should have objected to the admission of the 12 bullets on relevancy grounds. However, the State's ballistics expert testified that the same weapon which was used to fire the bullet which killed the victim could also be used to fire the bullets encased in the 12 cartridges found in the immediate vicinity of George Carter's arrest.

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Evid. R. 401. We believe that there is no question in this case but that the ammunition cartridges recovered in connection with the arrest of George Carter were admissible in the appellants' 1986 trial. Cf. *State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991) (shotgun shells inadmissible to attempt to prove that a defendant was guilty of theft by receiving stolen property and of intent to distribute or deliver amphetamine). Because the ammunition cartridges were clearly admissible, the appellants' attorneys were not remiss in failing to object to the admission of the ammunition cartridges at trial.

The defendants next contend that although George Carter's trial attorney moved for a directed verdict at the close of the State's case in chief, that attorney was deficient in failing to move for a dismissal of the first degree murder charges against him or for a directed verdict on the specific grounds that the State had failed to present evidence that George Carter acted with the requisite intent required for a first degree murder conviction. In their brief, the defendants point to Kincaid's testimony that Victor Carter fired the shot which killed the

victim and state that the prosecutor's theory in charging George Carter with first degree murder was that he had aided and abetted Victor Carter in the murder of the victim.

Where a crime requires the existence of a particular intent, an alleged aider or abettor cannot be held criminally liable as a principal unless it is shown that the aider knew that the perpetrator of the act had the required intent, or that the aider himself possessed the required intent. *State v. Dittrich*, 191 Neb. 475, 215 N.W.2d 637 (1974). However, one who intentionally aids and abets the commission of a crime may be responsible not only for the intended crime, if it is in fact committed, but also for other crimes which are committed as a natural and probable consequence of the intended criminal act. *State v. Trackwell*, 235 Neb. 845, 458 N.W.2d 181 (1990).

In the present case, although George Carter may not have fired the fatal shot, there is evidence that he acted purposely and with deliberate and premeditated malice, see Neb. Rev. Stat. § 28-303(1) (Reissue 1989), in the carrying out of the victim's murder. The record shows that just prior to the shooting, George Carter was driving a vehicle in which he was accompanied by Victor Carter, when Victor Carter, while brandishing a handgun, sought to determine whether Kincaid was in the vehicle driven by Hatfield. George Carter then drove to the Kincaid residence, fired shots, and sped away.

In determining whether a criminal defendant's motion to dismiss for insufficient evidence should be sustained, the State is entitled to have all of its relevant evidence accepted as true, the benefit of every inference that reasonably can be drawn from the evidence, and every controverted fact resolved in its favor. *State v. Grantzinger*, 235 Neb. 974, 458 N.W.2d 461 (1990). In a criminal case a trial court can direct a verdict only when (1) there is a complete failure of evidence to establish an essential element of the crime charged, or (2) the evidence is so doubtful in character and lacking in probative value that a finding of guilt based on such evidence cannot be sustained. *State v. Schumacher*, 240 Neb. 184, 480 N.W.2d 716 (1992).

Under the facts of this case, the trial court could not have properly dismissed George Carter's first degree murder charge, nor could it have directed a verdict in favor of George Carter.

The defendants next argue that they received ineffective assistance of counsel in that their attorneys did not call them to testify during their trial and because their attorneys also failed to call Anzalone to testify on their behalf. However, during their trial, each of the defendants stated on the record that he had discussed with his attorney the option of testifying before the jury. Each of the defendants stated that his attorney had explained that if the defendant testified on his own behalf, the State would be entitled to question him regarding prior convictions. The defendants each then stated that they did not wish to testify at trial. Similarly, the defendants stated that they did not wish to have Anzalone testify on their behalf.

It is clear from the record that each of the defendants, in consultation with his attorney, made an informed decision not to testify. With these decisions, the defendants prevented the disclosure of their prior criminal records. The issue raised by the defendants is one of trial strategy, and their attorneys were not deficient in advising them not to testify. See, *State v. El-Tabech*, 234 Neb. 831, 453 N.W.2d 91 (1990); *State v. Journey*, 207 Neb. 717, 301 N.W.2d 82 (1981).

The record shows that the defendants also participated in the decision not to call Anzalone as a witness. As stated earlier in this opinion, the decision to call or not to call a particular witness, made by counsel as a matter of trial strategy, even if that choice proves ineffective, will not, without more, sustain a finding of ineffectiveness of counsel. *State v. Ellefson*, 231 Neb. 120, 435 N.W.2d 653 (1989).

The defendants also claim that the counsel they received was ineffective because their attorneys failed to request jury instructions on self-defense and manslaughter. As noted previously, the record does not support a self-defense instruction. See *State v. Allison*, 238 Neb. 142, 469 N.W.2d 360 (1991). In addition, each of the defendants stated on the record during the trial that, after consultation with his attorney, he preferred that the jury be instructed only on the first degree charges. It appears from their trial tactics that, given their criminal records and the fact that their potential sentences would be subject to enhancement under Nebraska's habitual criminal statute, Neb. Rev. Stat. § 29-2221 (Reissue 1989), the

·

appellants sought to limit the avenues by which the jury could convict them. The fact that this tactic was not successful does not, by itself, prove that trial counsel was ineffective. See, *State v. El-Tabech, supra; State v. Journey, supra.*

Furthermore, the trial court instructed the jury with respect to both first and second degree murder. By finding the defendants guilty of the greater offense, first degree murder, the jury not only determined that the defendants had *intentionally* killed the victim, but it also found that the defendants killed the victim *purposely and with deliberate and premeditated malice.* See § 28-303(1) and Neb. Rev. Stat. § 28-304 (Reissue 1989). To have found the defendants guilty of only manslaughter, the jury would have had to find that the defendants acted without malice when they killed the victim. See Neb. Rev. Stat. § 28-305 (Reissue 1989). Consequently, the jury's verdict in this case makes it clear that the defendants would not have benefited from a manslaughter instruction.

The defendants next contend that their attorneys were deficient in failing to create a record with respect to the jury's questions regarding the instructions and the jury's request for a ruler. However, the defendants have failed to demonstrate that they were prejudiced by the lack of such a record.

In addition, according to the defendants, it apparently was discovered during jury deliberations that, contrary to the trial court's admonitions, one of the jurors was in possession of a newspaper. The defendants argue that their trial attorneys were ineffective in failing to raise the issue of such juror misconduct. However, in this case, the record contains no proof that a juror was exposed to any extraneous prejudicial information. There is no indication in the record that any juror was exposed to any extraneous information relating to the charges against the defendants. Cf., *State v. West,* 217 Neb. 389, 350 N.W.2d 512 (1984); *State v. Rust,* 223 Neb. 150, 388 N.W.2d 483 (1986); *State v. Woodward,* 210 Neb. 740, 316 N.W.2d 759 (1982); *State v. Trammell,* 240 Neb. 724, 484 N.W.2d 263 (1992).

As stated earlier, to sustain a claim of ineffective assistance of counsel and thereby obtain reversal of a defendant's conviction, the defendant must show that counsel's performance was deficient and that such deficient performance

prejudiced the defense. *State v. Blank*, 239 Neb. 188, 474 N.W.2d 689 (1991); *State v. White*, 238 Neb. 840, 472 N.W.2d 720 (1991). The defendants have failed to show that they were prejudiced by the performance of their attorneys regarding a juror's alleged possession of a newspaper.

The defendants also argue that the performance of their attorneys was deficient with respect to several other issues, including evidential questions relating to the admission of a gun case and evidence relating to the altercation at 19th and Lothrop Streets which occurred prior to the shooting, as well as questions regarding the peremptory challenges of African-American jurors. However, these issues were raised by the defendants' trial counsel and were decided by this court in the defendants' direct appeal. A motion for postconviction relief may not be used as a substitute for an appeal or to receive a further review of issues already litigated. See *State v. Ferrell*, 230 Neb. 958, 434 N.W.2d 331 (1989).

Because the defendants have failed to show that they are entitled to postconviction relief, the judgment of the trial court must be affirmed.

AFFIRMED.