Melvin SLEDD, Petitioner–Appellant,

v.

David R. McKUNE and Robert
T. Stephan, Respondents–
Appellees.

No. 94–3193.

United States Court of Appeals,
Tenth Circuit.

Dec. 7, 1995.

David J. Gottlieb, Lawrence, Kansas, for
Petitioner–Appellant.

John K. Bork, Assistant Attorney General,
(Jean M. Schmidt, Assistant Attorney General, with him on the brief), Topeka, Kansas,
for Respondents–Appellees.

---

Before EBEL, Circuit Judge,
McWILLIAMS, Senior Circuit Judge, and
JENKINS, Senior District Judge.*

McWILLIAMS, Senior Circuit Judge.

This is an appeal from the judgment of the district court dismissing a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. The chronology out of which the present controversy arose is a bit convoluted, but a recital thereof is necessary to an understanding of our resolution of the appeal.

Melvin Sledd, the petitioner in federal district court, was charged with murder in the district court for Shawnee County, State of Kansas.[1] A jury convicted him of involuntary manslaughter. As will be developed later, the sole ground for habeas corpus relief was phrased in Sledd's pro se petition in federal district court as "[w]hether the [state] trial court violated Mr. Sledd's constitutional rights to a fair trial and equal protection of the laws when it accepted, as racially neutral, the State's explanations for peremptorily challenging members of his minority race from the venire."

Sledd is an African American. Thirty-six jurors were qualified for cause, with the State and Sledd each to exercise twelve peremptory challenges, thus arriving at a jury of twelve. Of the thirty-six qualified jurors, four were African American. The procedure employed in exercising the peremptory challenges was for the State to exercise its first challenge by writing the name of its first challenge on a piece of paper and then passing the paper to defense counsel who, in turn, would write the name of his first challenge. The paper would then be passed back and forth until each side had exercised twelve challenges.

The State's seventh challenge was to Marcella Brown, an African American. So far as we can tell from the record before us, defense counsel made no contemporaneous objection to the State's challenge of Marcella Brown. The State's twelfth and final challenge was to an African American, Gary Lassiter. Defense counsel did object to that

---

* Honorable Bruce S. Jenkins, Senior District Judge for the District of Utah, sitting by designation.

1. Sledd was charged with the murder of his girl friend's two-year old son, Michael Emery.

particular challenge, about which more will be said later. The objection to the State's challenge of Gary Lassiter was, after hearing, overruled. Defense counsel, as his twelfth and last challenge, removed one of the two African Americans still remaining on the petit venire. All of which meant that of the twelve jurors who served as jurors at Sledd's trial, eleven were white and one was an African American.

As indicated above, when Marcella Brown was peremptorily challenged by the State as its seventh challenge, defense counsel made no objection. When the State, as its twelfth and last challenge, struck Gary Lassiter from the petit venire, defense counsel did object. In objecting to the striking of Gary Lassiter, defense counsel made only one passing reference to the State's seventh challenge to Marcella Brown, which, in our view, did not constitute an objection, as such, to the striking of juror Brown.[2]

Sledd appealed his conviction to the Court of Appeals for the State of Kansas. In an unpublished opinion, which is a part of the record before us, the Court of Appeals reversed and remanded for a new trial. The order of the Kansas Court of Appeals appears as *State v. Sledd*, 812 P.2d 766 (Kan.Ct. App., June 7, 1991), though, as indicated, their opinion was an unpublished one.

In reversing and remanding, the Kansas Court of Appeals held that the State had not articulated a race neutral explanation for the striking of juror Marcella Brown. The Court of Appeals did not even consider the striking of Gary Lassiter, though observing that the "primary argument" of both Sledd and the State related to the challenge of Gary Lassiter. The State appealed.

In a published opinion, the Kansas Supreme Court, in turn, reversed the judgment of the Kansas Court of Appeals and affirmed

the judgment of the district court. *State v. Sledd*, 250 Kan. 15, 825 P.2d 114 (1992). Sledd's petition for certiorari to the United States Supreme Court was denied. *Sledd v. Kansas*, 506 U.S. 849, 113 S.Ct. 147, 121 L.Ed.2d 98 (1992).[3]

In reversing the Kansas Court of Appeals, the Kansas Supreme Court focused exclusively on Gary Lassiter and did not consider, in any way, Marcella Brown. The Kansas Supreme Court noted that in denying the challenge to the striking of Lassiter the district court stated that "[t]he other black juror [Marcella Brown] is not in contention here. Her husband works for the Kansas Highway Patrol. She was removed by State challenge."

As concerns juror Lassiter, the Kansas Supreme Court, agreeing with the trial court, concluded that, under the circumstances, Sledd had failed to make a *prima facie* case that Lassiter was challenged because of his race. Having thus decided, the Kansas Supreme Court declined to consider the trial court's alternative holding which accepted the State's proffered reasons for striking Lassiter from the panel.

As above indicated, the state district court denied Sledd's challenge to the State's striking of juror Lassiter from the petit venire. Before doing so, however, the district court heard from the prosecutor, who stated her reasons for striking Lassiter. In so doing, she spoke, *inter alia,* as follows:

I would proffer at this point my reasons for exercising the strike in regard to Mr. Lassiter, he, number one, he has not been in the community for very long, he is a member of a church, one of the largest organizations, he has told us, that he is in charge of a very active instructing of the members of his church in all sorts of religious instruction. I specifically asked him

---

2. In challenging the striking of juror Gary Lassiter, counsel opened his argument by stating that "[u]nder the *Batson* decision, we have to make our record. The State has elected as strike number twelve to strike Gary Lassiter. Ah [sic], strike number seven for the State was Marcella Brown." In the rather lengthy argument that followed, there was *no* mention of Marcella Brown, and the argument related *solely* to the striking of Gary Lassiter.

3. As concerns the cause of death of Michael Emery, the Kansas Supreme Court spoke as follows:

"The conclusion at the autopsy was that the child had been repeatedly struck in the abdominal area approximately 24 hours before his death. Numerous bruises were noticed on various parts of his body."

about his—what his opinions were or beliefs were in regard to the use of corporal punishment. Corporal punishment is one of the possible elements at issue in this case. And he gave—he gave a very honest answer, but stated that he in his religious beliefs is convinced that corporal punishment is appropriate to use.

I am persuaded by the fact that he has an opinion that it is all right to use corporal punishment. He said it is appropriate to use the rod. He takes an active role in defining for other people what the limits of corporal punishment should be. And in this case, I believe that that strength might impair his ability to apply a standard. We do not have a "law" against the use of corporal punishment. His idea of corporal punishment can go way beyond what is appropriate in this case being a child abuse case. There is going to be evidence or there may be evidence depending on how it comes out as to why the strikes or the blows were inflicted on this little boy. Some of the people have testified in previous proceedings that it was a form of punishment for crying and wetting his pants. Those are definitely areas where the issue of punishment will come up. And I believe his beliefs are too strong in this regard, that it is all right to strike a child and it is all right to strike a child with an object.

Because the State offered a "race neutral" explanation for striking juror Lassiter from petit venire, which the state trial court accepted, the federal district court held that the question of whether Sledd made a *prima facie* showing that the State struck juror Lassiter because of his race was "moot." The federal district court then went on to conclude that the state trial court's finding "that the prosecutor had articulated clear, reasonable, neutral and legitimate reasons specific to the case" was not clearly erroneous and on that basis dismissed Sledd's petition.

The federal district court made no mention in its opinion of juror number seven, Marcella Brown, who, as mentioned, was struck by the State as its seventh challenge without contemporaneous objection thereto. In this Court, Sledd, however, does argue that no "race-neutral explanation" was ever offered by the State for its striking of Brown. Such is correct, nor was such necessary, since there was no objection in the state trial court to the State's striking of Brown. Such being the case, there is no basis for us to review the peremptory challenge of Brown. Accordingly, we are of the view that we are only concerned with Sledd's objection to the striking of juror Lassiter from the petit venire.

In *Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1880), the Supreme Court held that a State denies an African American defendant equal protection of the laws when it puts him on trial before a jury from which members of his race have been purposefully excluded. In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court held that the same equal protection principles as are applied to determine whether there is discrimination in selecting the venire also govern the State's use of peremptory challenges to strike individual jurors from the petit venire. In this regard, the Supreme Court in *Batson* at p. 89, 106 S.Ct. at p. 1719 spoke as follows:

> "[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."

As concerns the burden on a defendant to establish, *prima facie,* "purposeful discrimination in selection of a petit jury," the Court in *Batson* at p. 96, 106 S.Ct. at p. 1722 said:

> To establish such a case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude

the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination. (citations omitted).

In *Batson,* the Supreme Court held that when the defendant made a *prima facie* showing of purposeful discrimination by the State in selecting the jury through the use of its peremptory challenges, the burden then shifted to the State to come forward with a "neutral explanation" for challenging, in that case, an African American petit juror. Further, if the State offers a neutral explanation, then the trial judge must determine whether the defendant, based on the record as made, has established purposeful discrimination.

In *Hernandez v. New York,* 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), the prosecutor in a state trial peremptorily challenged two Latinos, to which defense counsel objected. Without waiting for a ruling on whether Hernandez had established *prima facie* a case of discrimination, the prosecutor volunteered that he had struck these two jurors, in part, because each was bilingual and that he had doubt that they would listen and accept the translation of an interpreter who was to be used in the trial of the case. In this connection, the prosecutor also stated that the two jurors had "looked away from me" and hesitated before responding to his question concerning their willingness to accept the translations of the court interpreter. The state trial judge then overruled the objection, the judge choosing to believe the prosecutor's explanation and rejecting Hernandez' assertion that the reasons were pretextual. On appeal, the state appellate court affirmed.

On direct review of Hernandez' conviction, the Supreme Court affirmed. In so doing, the Supreme Court said that since the prosecutor had offered an explanation, the preliminary question as to whether Hernandez had made a *prima facie* showing of discrimination was moot. On the ultimate issue, i.e. whether race discrimination was proven, the Supreme Court held that under all of the circumstances of that case, the trial court did not commit clear error in holding that the prosecutor did not discriminate on the basis of the Latino juror's ethnicity.

In *United States v. Johnson,* 941 F.2d 1102 (10th Cir.1991), after considering the principles of both *Batson* and *Hernandez,* we concluded that where the prosecutor offered a race neutral explanation for his peremptory challenges, the question of whether a defendant has, in the first instance, made a *prima facie* case of discrimination becomes moot. Hence, we hold in the instant case that the question of whether Sledd made a *prima facie* case of discrimination in the State's striking of Lassiter from the petit venire is moot. And we shall proceed to consider the explanation offered by the State for striking Lassiter and the trial court's acceptance thereof.

In overruling Sledd's objection to the State's peremptory challenge of Lassiter, the state trial court, after hearing counsel and reviewing the questions and answers asked on voir dire, spoke, at length, as follows:

In considering other circumstances and all relevant circumstances and the totality of the circumstances, I'm not persuaded at this point the defendant has established or made a prima facie showing that there has been a discriminatory purpose on the part of the prosecutor in the case at bar.

However, if we go beyond that point and look at the State's reason for exercising its peremptory challenge toward Mr.—or Reverend Lassiter, it appears that the explanation has to do with his comments which were fully reported by the court reporter with respect to the commonplace saying with respect to sparing the rod and spoiling the child. Those exact comments are set forth in the record, and I need not reiterate them at this point.

The State makes the argument that this is a concern to the State because the instant case does deal with alleged child abuse and that a punishment of a small child might be a factor in the evidence, it might be a matter that the jury will have to consider or discuss.

In the Court's view, there is nothing racially oriented about that kind of comment on the part of Mr. Lassiter—or Re-

verend Lassiter or the State's concern. It seems that this is a view which standing on its own does provide a neutral ground and a neutral explanation for challenging Reverend Lassiter. He volunteered that on his own. It's true that there was other inquiry with respect to other jurors, but he seems to have brought that up and to have made more of a point of it than other jurors. The fact that the State is concerned about it whether or not it's a concern that all prosecutors would have in the case does not affect whether it is a neutral concern or not. And so, without addressing the problem otherwise or the comment otherwise, I do not see that it is a racially oriented concern or is a ground which would constitute the basis for the Court to find that there is a lack of neutral explanation.

The Court therefore finds that this ground in the case at bar does constitute a neutral explanation for challenging this particular juror. And for these reasons, the Court would determine that there is no basis to legally challenge under *Batson v. Kentucky* the exercise of the State's peremptory challenge.

We agree with the federal district court that the state trial court's holding that the prosecutor had articulated a clear, reasonable, neutral and legitimate reason for challenging Lassiter is not clearly erroneous. And, to us, it seems quite correct. Child abuse was a part and parcel of the case against Sledd, and Lassiter, much more than any other potential juror, was a believer in the tenet that to spare the rod is to spoil the child. We hold that the prosecution's peremptory challenge of Lassiter was exercised in a constitutionally permissible manner.

Judgment affirmed.