# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-3493

_____

George Carter,                          *
                                        *
            Appellant,                  *
                                        *    Appeal from the United States
       v.                               *    District Court for the
                                        *    District of Nebraska.
Frank X. Hopkins,                       *
                                        *
            Appellee.                   *

_____

Submitted:  April 13, 1998

Filed:  August 11, 1998

_____

Before WOLLMAN, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

George Carter appeals from the district court's[1] denial of his 28 U.S.C. § 2254 petition for writ of habeas corpus.  We affirm.

_____

[1]The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska, adopting the report and recommendation of the Honorable Kathleen A. Jaudzemis, United States Magistrate Judge for the District of Nebraska.

## I.

In 1986, Carter was convicted in the State of Nebraska for first degree murder, use of a firearm in the commission of a felony, and being a habitual criminal.[2] Carter was sentenced to life imprisonment on the murder count and to a consecutive term of ten years on the use of a firearm count. The Supreme Court of Nebraska affirmed his convictions. See State v. Carter, 413 N.W.2d 901, 907 (Neb. 1987). Carter then filed a petition for state postconviction relief. His petition was denied, and the Nebraska Supreme Court subsequently affirmed the denial. See State v. Carter, 489 N.W.2d 846, 857 (Neb. 1992).[3]

In 1994, Carter filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 setting forth a myriad of arguments in support of his claim that his conviction was unlawful. Among these was an allegation that the State had improperly exercised peremptory challenges to strike three African-American jurors on account of their race in violation of Batson v. Kentucky, 476 U.S. 79, 89 (1986). A magistrate judge[4] issued a report and recommendation rejecting the bulk of Carter's claims but concluding that the Batson claim was worthy of more careful examination. In reviewing the Batson claim, the magistrate judge noted that the voir dire proceedings from Carter's trial were not recorded and thus were not part of the record. However, because testimony elicited during state postconviction proceedings indicated that the venire had contained four

---

[2]A detailed account of the facts underlying Carter's convictions is set forth in State v. Carter, 413 N.W.2d 901, 903-05 (Neb. 1987).

[3]In Carter v. Hopkins, 92 F.3d 666 (8th Cir. 1996), cert. denied, 117 S. Ct. 1113 (1997), we affirmed the denial of habeas relief to Victor Carter, George Carter's brother, on his claim that his counsel had rendered ineffective assistance by failing to object to the prosecutor's allegedly discriminatory use of peremptory challenges during the brothers' joint trial.

[4]The Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska.

African-American individuals and that three of these individuals had been removed via peremptory challenge while the other was successfully challenged for cause, the magistrate judge concluded that Carter had set forth a prima facie case under Batson. The magistrate judge concluded that Carter's apparent failure to object to the composition of the jury did not preclude his Batson claim because the State had waived the defense of procedural default. The magistrate judge therefore recommended that an evidentiary hearing be held in order to allow the State an opportunity to rebut Carter's prima facie case by articulating a race-neutral explanation for its use of peremptory challenges. The district court adopted the report and recommendation in its entirety.

On April 25, 1997, Magistrate Judge Jaudzemis held an evidentiary hearing on the Batson claim, at which the prosecutor who had tried Carter's case testified. The prosecutor recalled virtually nothing about the 1986 trial. He did not recall whether voir dire had been recorded or whether defense counsel had objected to his exercise of peremptory challenges. Moreover, he had no recollection whatsoever regarding the composition of the jury or his use of peremptory challenges. Carter also testified at the hearing and reiterated his allegation that four African-American individuals had been on the venire and that each had been removed. In addition, Carter testified that his trial counsel had ignored his requests to object to the composition of the jury.

Following the hearing, the magistrate judge issued a report recommending that Carter's habeas petition be denied. The district court adopted the report without modification. Carter then applied to the district court for a certificate of appealability. Concluding that Carter had made a substantial showing of a denial of a constitutional right with respect to his Batson claim, the court issued a certificate of appealability on that issue, but denied Carter's application with respect to all other issues.

## II.

Although the district court clearly limited the scope of Carter's certificate of appealability to the <u>Batson</u> issue only, Carter contends that he is entitled to argue other claims as well.

Habeas appeal procedures were amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214, 1217-18 (April 24, 1996). Under the new procedures, we may not review an order in a habeas proceeding involving a challenge to a detention arising out of process issued by state court unless a certificate of appealability is first issued. <u>See</u> 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. <u>See</u> 28 U.S.C. § 2253(c)(2). Moreover, the certificate must specify which of the applicant's claims satisfy the foregoing test. <u>See</u> 28 U.S.C. § 2253(c)(3). Because Carter's notice of appeal was filed well after the AEDPA's effective date, his argument that the AEDPA's requirement of a certificate of appealability is inapplicable in his case is foreclosed by our holding in <u>Tiedeman v. Benson</u>, 122 F.3d 518, 520-21 (8th Cir. 1997).

Alternatively, Carter contends that our review is not limited to those issues identified in the district court's certificate of appealability and that we are free to consider any and all issues so long as a certificate has issued. This argument fails, however, in light of our recent holding that appellate review is limited to the issues specified in the certificate of appealability. <u>See</u> <u>Ramsey v. Bowersox</u>, No. 97-1576, slip op. at 13 (June 10, 1998) (citing <u>Lackey v. Johnson</u>, 116 F.3d 149 (5th Cir. 1997)); <u>see also</u> <u>Murray v. United States</u>, 1998 WL 374952 (11th Cir. July 7, 1998).[5]

---

[5]In light of our holding, we deny as moot the state's motion to strike that portion of Carter's brief that raises issues not specified in the district court's certificate of appealability.

## III.

We turn, then, to Carter's <u>Batson</u> claim. We review the district court's conclusions of law de novo and its findings of fact for clear error. <u>See</u> <u>Knox v. State of Iowa</u>, 131 F.3d 1278, 1280-81 (8th Cir. 1997).[6]

In <u>Batson</u>, the Supreme Court held that the Equal Protection Clause is violated when the government exercises peremptory challenges to strike potential jurors solely on account of their race. 476 U.S. at 89.[7] Under <u>Batson</u>, a defendant carries the initial burden of making a prima facie case of purposeful discrimination in the use of peremptory challenges. <u>See</u> <u>United States v. Ortiz-Martinez</u>, 1 F.3d 662, 672 (8th Cir. 1993). The burden then shifts to the government to articulate a race-neutral explanation for the strikes. <u>See</u> <u>id.</u> The defendant may then demonstrate that the government's explanation is pretextual. <u>See</u> <u>United States v. Carr</u>, 67 F.3d 171, 175 (8th Cir. 1995). As in any Equal Protection case, the ultimate burden of persuasion is on the defendant to prove the existence of purposeful discrimination. <u>See</u> <u>Batson</u>, 476 U.S. at 93; <u>see also</u> <u>United States v. Feemster</u>, 98 F.3d 1089, 1091-92 (8th Cir. 1996).

---

[6]Although the AEDPA altered the substantive standards under which federal courts review state court determinations of law and fact, these substantive changes do not apply retroactively to cases filed prior to the AEDPA's effective date. <u>See</u> <u>Lindh v. Murphy</u>, 117 S. Ct. 2059, 2068 (1997); <u>Tiedeman</u>, 122 F.3d at 521; <u>Henderson v. Norris</u>, 118 F.3d 1283, 1288 n.2 (8th Cir. 1997), <u>cert. denied</u>, 118 S. Ct. 1081 (1998). Because Carter's habeas petition was filed more than two years before the AEDPA's effective date, the Act's more deferential standards of review, now codified at 28 U.S.C. § 2254 (1998), are not applicable to this case.

[7]Although <u>Batson</u> was decided twenty days after the conclusion of Carter's trial, the Supreme Court has held that <u>Batson</u> applies "retroactively to all cases, state or federal, pending on direct review or not yet final" at the time of the decision. <u>Griffith v. Kentucky</u>, 479 U.S. 314, 328 (1987). Thus, because Carter had not been sentenced at the time <u>Batson</u> was decided, its mandates are applicable to his case.

As the magistrate judge's report noted, applying <u>Batson</u>'s burden-shifting framework to the facts of this case is difficult because of the lack of an objection to the composition of the jury during trial. The ensuing delay in raising a challenge to the jury selection process has resulted in diminished recollections, as demonstrated by the prosecutor's failure to recall anything of significance with respect to Carter's trial. The matter is further complicated by the fact that voir dire was not recorded.[8]

We are thus faced with the question whether Carter is entitled to postconviction relief simply because a lengthy delay of his own making has dulled recollections to the extent that the State can no longer recall the reasons for its use of peremptory strikes. The district court concluded that he was not so entitled. Relying upon the reasoning of the Second Circuit in <u>McCrory v. Henderson</u>, 82 F.3d 1243, 1251 (2d Cir. 1996), the court held that although Carter's <u>Batson</u> claim was not precluded entirely, the long delay between jury selection and the filing of Carter's <u>Batson</u> claim rendered application of the burden-shifting framework inappropriate. The court accordingly denied the petition, concluding that Carter had failed to carry his ultimate burden of proving purposeful discrimination.

We agree with the district court's conclusion. In formulating <u>Batson</u>'s burden-shifting framework, the Supreme Court clearly "envisioned a 'timely objection' to the government's use of peremptory challenges." <u>United States v. Dobynes</u>, 905 F.2d 1192, 1196 (8th Cir. 1990) (quoting <u>Batson</u>, 476 U.S. at 99). A timely objection

---

[8]Ordinarily, a claim that peremptory challenges have been exercised in a discriminatory manner is procedurally defaulted if there has been no timely objection. See <u>United States v. Parham</u>, 16 F.3d 844, 847 (8th Cir. 1994); <u>Sledd v. McKune</u>, 71 F.3d 797, 799 (10th Cir. 1995); <u>Jones v. Butler</u>, 864 F.2d 348, 369-70 (5th Cir. 1988); <u>Government of the Virgin Islands v. Forte</u>, 806 F.2d 73, 75-76 (3d Cir. 1986) (subsequent history omitted). However, because the state failed to raise the defense of procedural default in its answer to Carter's habeas petition, the district court held that any such defense had been waived.

allows the trial court to remedy the discrimination prior to the commencement of trial and ensures the creation of an adequate record for review. See Dobynes, 905 F.2d at 1196-97. The purposes served by a timely objection are frustrated when the government is put in the position of having to explain the reasons for its use of peremptory strikes after it is no longer reasonable or practicable to expect it to be able to do so. As the Second Circuit recognized in McCrory:

> Batson's burden-shifting formula makes sense when applied to an objection raised sufficiently promptly that the attorney exercising the challenges can reasonably be expected to remember the reasons for the challenges. On the other hand, it would be altogether unreasonable to shift the burden of explanation if the objection is so tardily made that the challenging attorney cannot be reasonably expected to remember.

> The reasons lawyers prefer one juror over another can involve subtle fleeting impressions. During jury selection, lawyers can observe a large number of jurors (here 40) over a relatively short time, and form the impressions that will determine which ones they challenge. While the jurors selected for trial remain under the lawyer's scrutiny throughout the trial, those challenged disappear from view after only a brief observation. Lawyers, excepting those possessing remarkable capacity for memory, are unlikely to remember the challenged jurors or the decision to challenge for very long.

82 F.3d at 1251.

In this case, the consequences of Carter's tardiness are substantial. The state was not confronted with the burden of articulating race-neutral explanations for its use of peremptory strikes until approximately eleven years after the completion of trial. Hamstrung by the effects of the passage of time, the state could not reasonably be expected to remember the reasons for its challenges. We therefore conclude that it would be inappropriate to apply Batson's burden-shifting framework in this case.

Because Carter did not meet his ultimate burden of proving purposeful discrimination, the district court properly denied his petition for writ of habeas corpus.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.