951 A.2d 294

COMMONWEALTH of Pennsylvania, Appellee

v.

**James JONES, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 6, 2004.

Decided July 22, 2008.

288

Robert Brett Dunham, Philadelphia, for James Jones.

Amy Zapp, Hugh J. Burns, Jr., Philadelphia District Attorney's Office for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## *OPINION*

Justice TODD.[1]

In this capital case, Appellant James Jones appeals the August 11, 2006 order of the Philadelphia County Court of Common Pleas dismissing without a hearing his petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541–46. This case is before this Court following our prior remand to the PCRA court, wherein we instructed the court to consider Appellant's claim of racial discrimination during jury selection. For the reasons that follow, we now affirm the PCRA court's order.

Appellant was tried before the Honorable Robert Latrone and, on June 4, 1981, was convicted by a jury of two counts of first-degree murder,[2] two counts of arson endangering persons,[3] and one count of arson endangering property.[4] The convictions were based on an incident in which Appellant bound, gagged, and set fire to two victims in the basement of a house in Philadelphia.[5] On June 6, 1985, a jury sentenced Appellant to death based on its finding of three aggravating circumstances that outweighed its finding of one mitigating circumstance,[6] and on June 21, 1985, Appellant filed a notice of appeal.[7] Appellant's judgment of sentence was affirmed by

1. This matter was reassigned to this author.

2. 18 Pa.C.S.A. § 2502.

3. 18 Pa.C.S.A. § 3301(a).

4. 18 Pa.C.S.A. § 3301(c).

5. A full recitation of the facts underlying Appellant's conviction is set forth in this Court's opinion at *Commonwealth v. (James) Jones*, 539 Pa. 222, 651 A.2d 1101 (1994).

6. The aggravating factors found by the jury included the following: (1) Appellant committed a killing while in the perpetration of a felony (arson), 42 Pa.C.S.A. § 9711(d)(6); (2) Appellant knowingly created a grave risk of death to another person other than the victims of the murder, § 9711(d)(7); and (3) the murders were committed by the means of torture, § 9711(d)(8). The sole mitigating factor found by the jury was that Appellant had no significant history of prior criminal convictions, § 9711(c)(1).

7. Appellant's first brief was not filed until February 1990 due to several substitutions of counsel. A new brief was filed on Appellant's behalf in January 1994.

this Court on December 28, 1994, and the United States Supreme Court denied *certiorari* on October 2, 1995. *(James) Jones v. Pennsylvania,* 516 U.S. 835, 116 S.Ct. 113, 133 L.Ed.2d 65 (1995).

On October 6, 1995, Appellant filed a timely *pro se* PCRA petition, wherein he requested a new trial and asked that his judgment of sentence be vacated. Counsel was appointed, and following an evidentiary hearing, the PCRA court, on June 12, 2001, denied Appellant's request for a new trial, but vacated Appellant's death sentence and granted him a new penalty phase hearing. Appellant appealed the PCRA court's order to the extent it denied him a new trial, and the Commonwealth filed a cross-appeal, which it subsequently withdrew. On June 21, 2005, this Court affirmed the PCRA court's denial of relief, but remanded the matter to the PCRA court for further proceedings regarding a single issue, namely, Appellant's claim of racial discrimination during jury selection pursuant to *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We noted that the PCRA court had failed to conduct an evidentiary hearing on Appellant's claim of racial discrimination, and failed to address the claim in its opinion. *Commonwealth v. (James) Jones,* 583 Pa. 130, 876 A.2d 380 (2005).

On April 26, 2006, the PCRA court set a briefing schedule, at which time Appellant requested that the Commonwealth be ordered to produce the Philadelphia District Attorney's notes from *voir dire.* Thereafter, on June 30, 2006, Appellant submitted a statement regarding his *Batson* claim, which the PCRA court treated as a supplement to Appellant's PCRA petition. Following argument on August 11, 2006, the PCRA court concluded, in an opinion dated August 28, 2006, that Appellant was not entitled to relief.

Our standard of review in an appeal from the denial of PCRA relief requires us to determine whether the ruling of the PCRA court is supported by the record and is free from legal error. *Commonwealth v. Washington,* 592 Pa. 698, 710–11, 927 A.2d 586, 593 (2007) (citations omitted). In order to be

eligible for relief under the PCRA in effect at the time his petition was filed, Appellant must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the following:

(i) A violation of the Constitution of Pennsylvania or laws of this Commonwealth or the Constitution of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused an individual to plead guilty.

(iv) The improper obstruction by Commonwealth officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

(v) A violation of the provisions of the Constitution, law or treaties of the United States which would require the granting of federal habeas corpus relief to a state prisoner.

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and that would have affected the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction.

42 Pa.C.S.A. § 9543(a)(2), *amended by* 42 Pa.C.S.A. § 9543(a)(2) (1995).

■ Additionally, an appellant must prove that the issues raised have not been previously litigated or waived, and that "the failure to litigate the issue prior to or during trial or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel." 42 Pa.C.S.A.

§ 9543(a)(4). An issue has been previously litigated if the highest appellate court in which the petitioner was entitled to review as a matter of right has ruled on the merits of the issue. 42 Pa.C.S.A. § 9544(a)(2). Furthermore, a PCRA claim is waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding." *Washington*, 592 Pa. at 712, 927 A.2d at 594 (quoting 42 Pa.C.S.A. § 9544(b)).

On appeal, Appellant presents the following issues for review, which we have reordered for sake of our discussion:

I. Did this Court err in requiring the PCRA court to apply *Commonwealth v. Uderra* as the controlling law in reviewing [Appellant's] claim for relief under *Batson v. Kentucky?*

II. Did the PCRA court err in declining to treat this claim in the posture of a direct appeal *nunc pro tunc* as a result of the state courts' failures at all stages prior to post-conviction to produce the notes of testimony of the voir dire and the failures of all trial, post-trial, and direct appeal counsel to request production of the voir dire transcripts?

III. Did the PCRA court improperly deny relief on [Appellant's] claim that the Commonwealth exercised its preemptory strikes in a racially discriminatory manner, in violation of the Sixth and Fourteenth Amendments, and Article I, Sections 1, 9, and 26 of the Pennsylvania Constitution?

IV. Did the PCRA court err in refusing to grant discovery and an evidentiary hearing on [Appellant's] claim that the Commonwealth exercised its preemptory strikes in a racially discriminatory manner?

Appellant's Brief at 3.

## I. Applicability of *Commonwealth v. Uderra*

In our opinion of June 21, 2005, this Court noted that although the PCRA Court had addressed Appellant's claim of gender discrimination during *voir dire,* it failed to conduct an evidentiary hearing on Appellant's claim of racial discrimination, and failed to address the claim in its opinion. As a

result, we vacated the portion of the PCRA court's order dismissing Appellant's claim of racial discrimination and remanded "for the PCRA court to address this issue, including consideration of Appellant's request for an evidentiary hearing on this claim," citing *Commonwealth v. Uderra*, 580 Pa. 492, 862 A.2d 74, 87 (2004), as setting forth the standard for a claim of racial discrimination in jury selection that was not preserved at trial. *Jones*, 583 Pa. at 137, 876 A.2d at 384. Appellant now contends that this Court erred in instructing the PCRA court to apply *Uderra* when evaluating his claim for relief under *Batson*. We reject Appellant's claim.

In *Batson*, the United States Supreme Court reiterated that a defendant is denied equal protection of the law when the government "puts him on trial before a jury from which members of his race have been purposefully excluded." 476 U.S. at 85, 106 S.Ct. 1712. The Court in *Batson* established a three-step inquiry for evaluating claims of racial discrimination in jury selection. First, the defendant must make a *prima facie* showing that the prosecutor has exercised peremptory challenges on the basis of race. *Id.* at 96, 106 S.Ct. 1712. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. *Id.* at 97, 106 S.Ct. 1712. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. *Id.* at 98, 106 S.Ct. 1712.

Under *Batson*, to establish a *prima facie* case that the prosecutor exercised peremptory challenges in a racially discriminatory manner, the defendant must prove that he is a member of a cognizable racial or ethnic group and that the prosecutor has exercised peremptory challenges to remove members of such group from the venire. *Id.* at 96, 106 S.Ct. 1712. The defendant also must show that these facts and other relevant circumstances raise an inference that the Commonwealth used peremptory challenges to exclude venire persons from the same racial or ethnic group. *Id.* In doing so, the defendant is entitled to rely on the fact that "peremptory challenges constitute a jury selection practice that permits

'those to discriminate who are of a mind to discriminate.' " *Id.* (citation omitted).

In *Commonwealth v. Spence,* 534 Pa. 233, 627 A.2d 1176 (1993), this Court held that an appellant's failure to make a record for review of his *Batson* challenge prevents the Court from making a determination as to whether the trial court erred in failing to find a *prima facie* case under *Batson.* In declining to consider the appellant's claim in *Spence,* we explained that the appellant "failed to make an adequate record specifically identifying the race of all the veniremen who had been removed by the prosecution, the race of the jurors who served, or the race of jurors acceptable to the Commonwealth who had been stricken by the defense." *Id.* at 247, 627 A.2d at 1182–83.

Subsequently, in *Uderra,* the appellant acknowledged the requirements to establish a claim of discriminatory jury selection practices as set forth by this Court in *Spence,* but argued that those requirements "are unduly burdensome and inconsistent with the federal case law, as such information is not necessary to the determination of a *Batson* violation." *Uderra,* 580 Pa. at 507, 862 A.2d at 83. We recognized in *Uderra* that our "particularized requirements of proof to support a *prima facie* case" under *Batson* had been criticized by the Third Circuit Court of Appeals in *Holloway v. Horn,* 355 F.3d 707, 728–29 (3rd Cir.2004), as being "an unreasonable application of federal law" that "places an undue burden upon the defendant," but concluded:

The Third Circuit's points are most resonant in a case such as *Holloway,* in which the assessment on appeal is of objections raised during the *voir dire* process, thus triggering contemporaneous identification of the racial or ethnic heritage of venirepersons in question, explanations from the prosecutor concerning the basis for his strikes, and an essential evaluation by the trial court.... Greater difficulties arise, however, in cases such as the present one, in which there simply was no *Batson* objection raised during the *voir dire* process to trigger the requisite, contemporaneous inquiry. In such circumstances, where the record was

not appropriately focused and channeled at trial, and, concomitantly, the trial court has not been asked to make the necessary findings that would be [sic] generate the deference undergirding the *Batson* burden-shifting construct, it is exponentially more difficult to perform a reasoned assessment concerning the presence or absence of purposeful discrimination.

*Uderra,* 580 Pa. at 510–11, 862 A.2d at 85–86. We further noted that in such cases, "it appears to be an emerging view that a defendant is not entitled the benefit of *Batson's* burden-shifting formula, but instead, bears the burden in the first instance and throughout of establishing actual, purposeful discrimination." *Id.* at 512, 862 A.2d at 86 (citing *McCrory v. Henderson,* 82 F.3d 1243, 1251 (2nd Cir.1996) (*"Batson's* burden-shifting formula makes sense when applied to an objection raised sufficiently promptly that the attorney exercising the challenges can reasonably be expected to remember the reasons for the challenges. On the other hand, it would be altogether unreasonable to shift the burden of explanation if the objection is so tardily made that the challenging attorney cannot be reasonably expected to remember.")).

We further found that this emerging view "comports with the heightened criteria for obtaining post-conviction relief," which includes the requirement that a petitioner demonstrate prejudice, or, in situations where an underlying claim is waived, that the petitioner raise the claim through an assertion of ineffective assistance of counsel. *Id.* at 512, 862 A.2d at 86. Finding the Third Circuit's analysis in *Holloway* to be "least resonant in relation to claims deriving from the absence of an appropriate *Batson* challenge at trial," we stated:

[i]n such circumstances, in order to succeed on an unpreserved claim of racial discrimination in jury selection, we agree with those jurisdictions that have held that a post-conviction petitioner may not rely on a *prima facie* case under *Batson,* but must prove actual, purposeful discrimination by a preponderance of the evidence, *accord McCrory,*

82 F.3d at 1251, in addition to all other requirements essential to overcome the waiver of the underlying claim. *Uderra,* 580 Pa. at 513, 862 A.2d at 87.

In arguing that this Court erred in instructing the PCRA Court to apply *Uderra,* Appellant contends that the *Uderra/Spence* standard is "fundamentally inconsistent" with the requirements of *Batson.* Appellant's Brief at 60. In support of his argument, Appellant quotes, *inter alia,* the following language from *Holloway:*

> *Batson* is premised on the fact that defendants "have the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria," and the "Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race." *Batson,* 476 U.S. at 85–86, 106 S.Ct. 1712. The final composition of the jury (or even the composition of the jury at the time the *Batson* objection is raised) offers no reliable indication of whether the prosecutor intentionally discriminated in excluding a member of the defendant's race.... Thus, "a *Batson* inquiry focuses on whether or not racial discrimination exists in the striking of a black person from the jury, not on the fact that other blacks may remain on the jury panel." *United States v. Johnson,* 873 F.2d 1137, 1139 n. 1 (8th Cir.1989). A defendant can make a *prima facie* case of discrimination without reference to the jury's racial makeup.

Appellant's Brief at 62 (quoting *Holloway,* 355 F.3d at 728–29).

We decline Appellant's invitation to overrule *Uderra* on the basis of *Holloway, supra, Lark v. Beard,* 495 F.Supp.2d 488 (E.D.Pa.2007) (noting that no other circuit has followed the Second Circuit's approach in *McCrory, supra,* applying a different standard for evaluating *Batson* claims in the trial setting), and other federal cases. It is well settled that this Court is not bound by decisions of federal courts inferior to the United States Supreme Court. *Commonwealth v. Travaglia,* 541 Pa. 108, 130 n. 15, 661 A.2d 352, 363 n. 15 (1995).

Indeed, as we noted in *Commonwealth v. Spotz,* 587 Pa. 1, 896 A.2d 1191 (2006), neither this Court nor the United States Supreme Court has overruled our requirement of a full and complete record for establishing a *Batson* violation. *Id.* at 36 n. 27, 896 A.2d at 1212 n. 27 (citing *Commonwealth v. Fletcher,* 580 Pa. 403, 861 A.2d 898 (2004)).

Appellant nevertheless maintains that the United States Supreme Court's decision in *Johnson v. California,* 545 U.S. 162, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005), decided one week before this Court's remand in the instant case, calls into question the applicability of *Uderra.* Appellant asserts that *Johnson* "makes clear that *Batson* does not require the defendant to bear the burden of persuasion at the *prima facie* stage," and quotes the following language from *Johnson:*

> [I]n describing the burden-shifting framework, we assumed in *Batson* that the trial judge would have the benefit of all relevant circumstances, including the prosecutor's explanation, before deciding whether it was more likely than not that the challenge was improperly motivated. We did not intend the first step to be so onerous that a defendant would have to persuade the judge—on the basis of all the facts, some of which are impossible for the defendant to know with certainty—that the challenge was more likely than not the product of purposeful discrimination. Instead, a defendant satisfies the requirements of *Batson's* first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.

Appellant's Brief at 65 (quoting *Johnson,* 545 U.S. at 170, 125 S.Ct. 2410).

Appellant concedes, however, that in *Johnson,* the appellant raised his *Batson* claim at trial. *See* Appellant's Brief at 60 n. 32. Thus, the difficulties that arise when a *Batson* claim is not raised at trial, as contemplated by this Court in *Uderra,* were neither implicated nor addressed in *Johnson.* Accordingly, we conclude that *Johnson* is factually distinguishable and does not invalidate the *Uderra/Spence* standard espoused by this Court. Therefore, we reject Appellant's argument that this Court erred in instructing the PCRA court to evaluate Appel-

lant's claim of racial discrimination during jury selection under the standard set forth by this Court in *Uderra/Spence*.

## II. Failure of PCRA court to treat Appellant's claim in context of a direct appeal

Appellant also argues that principles of equity weigh against application of the *Uderra/Spence* standard in the instant case. This argument is the basis for Appellant's second issue, wherein he asserts that the PCRA court erred in refusing to treat his *Batson* claim as if it had been presented on direct appeal in light of the fact that he did not obtain the notes of testimony from *voir dire* until 1997. Appellant blames the delay in obtaining the notes of testimony on his direct appeal counsel, alleging that counsel was ineffective in failing to request that the notes of testimony from *voir dire* be transcribed. Appellant also alleges that the trial court's failure to transmit the entire record, as required by Pa.R.A.P. 2189,[8] prevented this Court from conducting the review mandated under 42 Pa.C.S.A. § 9711(h)(2) (permitting this Court to correct errors at trial and affirm or vacate a sentence of death and remand for further proceedings) and (3)(i) (providing that this Court shall affirm a death sentence unless we determine that the sentence was the product of passion, prejudice or any other arbitrary factor). According to Appellant, it is these errors by the trial court and direct appeal counsel that prevented him from raising his *Batson* claim on direct appeal, and, as a result, denied him appellate review of his claim under the less-demanding standard of *Batson* instead of *Uderra/Spence*.

■ With regard to Appellant's allegation that the trial court erred in failing to produce the transcripts of *voir dire* for purposes of Appellant's direct appeal, the Commonwealth correctly states that it is the duty of the defendant to request that notes of testimony, including notes from *voir dire,* be transcribed. *See* Pa.R.A.P. 1911(a) ("The appellant shall re-

8. Rule 2189 requires that, in all cases involving the death penalty, eight copies of the entire record be filed with the Supreme Court prothonotary, unless otherwise ordered by this Court.

quest any transcript required under this chapter."). Appellant admits that he did not request transcription of the notes of testimony from *voir dire* until 1996. In *Commonwealth v. Jones*, 590 Pa. 202, 230, 912 A.2d 268, 284–85 (Pa.2006), this Court explained that an appellant cannot blame the trial court or the Commonwealth for his own failure to obtain transcripts of *voir dire*, because it is not their responsibility for providing him with such transcripts. *See also Commonwealth v. Stokes*, 576 Pa. 299, 839 A.2d 226 (2003) (holding that it is the appellant's responsibility to secure a complete record for review).

■■ To the extent Appellant argues that his direct appeal counsel was ineffective for failing to request that the notes of testimony from *voir dire* be transcribed, it is well established that counsel is presumed effective, and in order to overcome this presumption, an appellant must establish (1) that the underlying claim has arguable merit; (2) that counsel had no reasonable basis for his action or inaction; and (3) that the appellant has been prejudiced by counsel's ineffectiveness. *Washington*, 592 Pa. at 712, 927 A.2d at 594 (citations omitted). Failure to establish any one of these prongs is fatal to an appellant's claim. *Id.* Furthermore, in order to demonstrate prejudice, an appellant must show that but for the act or omission in question, the outcome of the proceedings would have been different. *Id.*

As the Commonwealth points out, the transcript of the *voir dire* proceedings does not identify the race of any of the jurors struck by the prosecution. Thus, the transcription of the notes of testimony would not have revealed a basis for a claim of a *Batson* violation, and as a result, Appellant has failed to demonstrate that he suffered any prejudice from counsel's alleged ineffectiveness in failing to request that the notes of testimony be transcribed. Accordingly, we reject Appellant's argument that the PCRA court erred in declining to treat his *Batson* claim as if presented on direct appeal based on ineffective assistance of counsel and the failure of the trial court to produce the notes of testimony of *voir dire*.

### III.  Denial of PCRA relief

■   Appellant next contends that the PCRA court erred in denying him relief because he pled sufficient facts to establish a *prima facie* case under *Batson*.  In response, the Commonwealth argues that Appellant's *Batson* claim is waived because he failed to raise it on direct appeal and does not adequately argue this claim in the context of ineffectiveness of counsel so as to avoid waiver.  The Commonwealth further avers that even if Appellant's claim was preserved or presented as a properly layered ineffectiveness claim, he would not be entitled to relief because Appellant conceded that he is unable to establish a claim under the standard of *Uderra/Spence*.  We conclude that Appellant's *Batson* claim is, in fact, waived, and that even if the claim was not waived, it is meritless.

In *Commonwealth v. Sneed*, 587 Pa. 318, 327 n. 9, 899 A.2d 1067, 1073 n. 9 (2006), the Commonwealth appealed the PCRA court's order granting the appellant a new trial [9] based on its finding that the appellee presented a *prima facie* case of intentional discrimination in jury selection and that the prosecutor's proffered race-neutral explanations for striking four black veniremembers were pretextual and not credible.[10]  In vacating the PCRA court's grant of a new trial, this Court concluded that the appellant's *Batson* claim was waived:

> It is well-settled that in order for a new rule of law to apply retroactively to a case pending on direct appeal, the issue had to be preserved at all stages of adjudication, including

**9.**  The Commonwealth also appealed the PCRA court's order granting the appellant a new penalty hearing based on claims of ineffectiveness of counsel.  This Court affirmed that portion of the PCRA court's order.

**10.**  We noted in *Sneed* that the PCRA court did not apply our precedent that requires a defendant who raises a *Batson* claim to "present a record identifying the race of veniremembers stricken by the Commonwealth, the race of the prospective jurors acceptable to the Commonwealth but stricken by the defense, and the racial composition of the final jury selected."  587 Pa. at 327 n. 9, 899 A.2d at 1073 n. 9. We further noted that pursuant to *Uderra,* a post-conviction petitioner asserting an unpreserved claim of racial discrimination in jury selection may not rely on a *prima facie* case under *Batson,* but must establish actual purposeful discrimination.  *Id.* We acknowledged, however, that the PCRA court in *Sneed* did not have the benefit of our decision in *Uderra.  Id.*

at trial and on direct appeal.... Accordingly, the Commonwealth is correct that, in order for appellee to have been entitled to retroactive application of *Batson* on his direct appeal, he had to have challenged the Commonwealth's use of peremptory challenges at trial and on direct appeal. Appellee, however, did not do so; rather, he raised his *Batson* claim for the first time in his amended PCRA petition. Appellee would not be entitled to retroactive application of the *Batson* decision if this were a direct appeal, and he certainly is not entitled to its retroactive benefit on a collateral attack under the PCRA. For PCRA purposes, his *Batson qua Batson* claim is waived.

*Id.* at 331, 899 A.2d at 1075. As Appellant did not challenge the use of the prosecutor's peremptory challenges at trial or on direct appeal, but like the appellee in *Sneed,* raised his *Batson* claim for the first time in his PCRA petition, the claim is waived.[11]

We noted in *Sneed,* however, that under the then-existing capital case relaxed waiver doctrine,[12] a derivative claim that trial counsel was ineffective for failing to raise a *Batson* claim,

11. We note that in remanding this case to the PCRA court for consideration of Appellant's claim of racial discrimination during jury selection under *Uderra,* this Court did not rule explicitly or implicitly, on whether Appellant's claim had been preserved. Rather, we explained that the PCRA court's failure to conduct an evidentiary hearing on Appellant's claim, or address Appellant's claim in its opinion, hampered our meaningful appellate review of the matter. *See Jones,* 876 A.2d at 384; *but see id.* at 389 (Castille, J., concurring and dissenting) (opining that Appellant "unquestionably waived" any *Batson* claim by failing to raise it at trial and on direct appeal and that the only cognizable and non-waived claim regarding jury selection sounded in ineffectiveness of counsel); *id.* at 390 (Eakin, J., concurring and dissenting) (opining that Appellant waived his *Batson* claim and was not entitled to relief based on ineffective assistance of counsel because, by failing to prove actual, purposeful discrimination by a preponderance of the evidence as required under *Uderra,* Appellant did not establish that the underlying claim had merit).

12. In *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693 (1998), this Court stated that it would no longer apply the relaxed waiver doctrine in PCRA capital appeal cases, as the "ever-widening application of the doctrine has, in effect, virtually eliminated any semblance of finality in capital cases, and frustrated the efficient use of the resources of this court." *Id.* at 44, 720 A.2d at 700.

either at trial or on direct appeal, would be cognizable and not waived under the PCRA. *Id.* Nevertheless, in considering Sneed's *Batson* claim in the context of an allegation of ineffective assistance of counsel, we stated:

Counsel clearly cannot be faulted for failing to raise a *Batson* objection at trial because *Batson* did not yet exist. With respect to counsel's performance on direct appeal, it is true that counsel at that time could have sought to raise a non-preserved *Batson* claim by invoking direct capital review relaxed waiver. In faulting counsel for failing to do so, however, appellee "ignores that this [C]ourt's relaxed waiver doctrine was discretionary, and thus, there was no guarantee that we would have analyzed this issue under the relaxed waiver doctrine."

Moreover, belatedly faulting counsel for failing to seek the benefit of the new *Batson* rule on direct appeal overlooks the practical hurdles that would have derailed such an endeavor. Because counsel did not anticipate the *Batson* rule (and/or because counsel apparently saw no evidence of purposeful discrimination in jury selection), there was no record upon which to construct an appellate *Batson* claim. *Batson* contemplated a central role for the trial judge both in assessing whether a *prima facie* case was made out, and if so, in assessing the credibility of the neutral reasons for peremptory strikes proffered by the lawyer who exercised them. In this case, counsel had no such record or findings to rely upon. The fact-intensive nature of a *Batson* claim, thus, negates the notion that one could successfully argue such a claim for the first time on appeal, with no supporting record, and have any reasonable prospect of success.

*Id.* at 333, 899 A.2d 1067, 899 A.2d at 1076–77 (citations omitted). In the instant case, as in *Sneed,* the trial court record was wholly insufficient to enable counsel to successfully argue a *Batson* claim on direct appeal; thus, Appellant's attempt to raise his waived *Batson* claim via a claim of ineffective assistance of direct appellate counsel fails.

■ Even assuming that Appellant's *Batson* claim is not waived, however, we conclude that he is not entitled to relief.

First, as noted above, Appellant must establish actual, purposeful discrimination, *see Uderra, supra,* which Appellant concedes he is unable to do. Moreover, even if we agreed with Appellant that *Uderra* does not apply, we conclude that Appellant has failed to establish a *prima facie* case of discrimination under *Batson.*

In support of his assertion that he has established a *prima facie* case under *Batson,* Appellant alleges that "there was a long-standing office policy and practice of keeping track of the race of the jurors during voir dire," Appellant's Brief at 23–24, and specifically references the infamous "McMahon tape," a 1987 videotape in which a Philadelphia assistant district attorney, Jack McMahon, described his views on jury selection. Those views revealed a philosophy of racial discrimination in jury selection and a disregard for the principles of *Batson.* Nevertheless, "[t]his Court has repeatedly rejected similar arguments, holding that the mere existence of the McMahon tape does not demonstrate prejudice in a particular case." *Washington,* 592 Pa. at 739, 927 A.2d at 610. This is especially the case where, as in the instant case, the prosecutor at an appellant's trial was someone other than McMahon, and the time of the appellant's trial was temporally remote from the creation of the videotape. *See Uderra,* 580 Pa. at 513–14, 862 A.2d at 87. Appellant's trial took place approximately six years before the McMahon tape was created. Accordingly, the existence of the McMahon tape does not establish prejudice at Appellant's trial.

### IV. Appellant's right to discovery and evidentiary hearing

Finally, Appellant argues that the PCRA court erred in denying his request for discovery of the prosecutor's *voir dire* notes and an evidentiary hearing. He asserts that he established the requisite "good cause" under Rule 902(E)(2) of the Pennsylvania Rules of Criminal Procedure [13] because he

13. The Commonwealth points out that at the time Appellant filed his PCRA petition, on October 6, 1995, there was no right to discovery in PCRA proceedings. *See* Commonwealth's Brief at 14 (citing *Commonwealth v. Abu–Jamal,* 553 Pa. 485, 720 A.2d 79, 91 (1998)). Indeed,

alleged a long-standing practice by the Philadelphia District Attorney's office of tracking the race of jurors during *voir dire* and that the prosecutor in his case, Roger King, routinely kept such notes. Appellant further maintains that any such notes made by King in the instant case would corroborate his claim that the prosecution "disproportionately exercised its peremptory challenges to strike African American jurors." Appellant's Brief at 20. As support for his position that he is entitled to discovery of documents which he believes will allow him to establish a *prima facie* case of discrimination under *Batson*,[14] Appellant cites several federal court decisions interpreting the meaning of "good cause" under the discovery provisions of *habeas corpus* statutes.

However, this Court has held where an appellant has failed to raise or preserve a *Batson* claim at trial, and, therefore, the claim is unavailable under the PCRA, the appellant is not entitled to discovery related to that claim. *See Commonwealth v. (Damon) Jones*, 569 Pa. 229, 802 A.2d 1232 (2002) (reversing the PCRA court's discovery order); *see also Commonwealth v. Tilley*, 566 Pa. 312, 780 A.2d 649 (2001) (holding that PCRA court erred in granting appellee's request under Pa.R.Crim.P. 1502(E)(2) for discovery of all data held by the prosecutor's office and/or trial court regarding the race of the members of the jury panel, as well as notes relating to jury selection, since the appellee could not establish the required good cause for discovery because the appellee was not entitled to raise a *Batson* claim). As discussed above, Appellant's *Batson* claim was waived, and as a result, he was not entitled to discovery related to that claim.

For the foregoing reasons, we affirm the PCRA court's order dismissing Appellant's petition for relief under the PCRA.

Pa.R.Crim.P. 902(E)(2), which provides "[o]n the first counseled petition in a death penalty case, no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of good cause," and which was recodified from Rule 1502(E)(2), was not enacted until almost two years later.

14. As discussed previously, Appellant must establish more than a *prima facie* case; he must prove actual, purposeful discrimination by a preponderance of the evidence.

Justice GREENSPAN did not participate in the consideration or decision of this case.

Justices SAYLOR, BAER and McCAFFERY join the opinion.

Chief Justice CASTILLE files a concurring opinion in which Justice EAKIN joins.

## CONCURRING OPINION

Chief Justice CASTILLE.

I maintain the view that appellant's failure to raise a contemporaneous objection to the jury selection process at his trial is fatal to his *Batson* claim, and if left to my own devices, I would not reach the other points addressed by the Majority Opinion. Nevertheless, given that Madame Justice Todd's analysis is thorough and eminently well-reasoned, and that a majority of this Court determined in *Commonwealth v. Jones,* 583 Pa. 130, 876 A.2d 380 (2005) (*"James Jones I "*) that consideration of the merits of appellant's *Batson* claim was warranted, I join the Majority Opinion and write only to elaborate on several points.

*Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) revolutionized jury selection practices, so much so that the High Court has repeatedly made clear that the decision does not apply retroactively. *See, e.g., Allen v. Hardy,* 478 U.S. 255, 259–61, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986); *Ford v. Georgia,* 498 U.S. 411, 417, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). The variety of *Batson* challenges forwarded here, however cleverly constructed, cannot change the essential circumstances of the instant appeal. By constitutional definition, appellant's 1981 jury selection cannot have been conducted in violation of a non-retroactive constitutional rule that did not then exist, and that appellant did not predict and preserve by contemporaneous challenge. Appellant's requested relief is therefore barred, as this Court recognized in *Commonwealth v. Sneed,* 587 Pa. 318, 899 A.2d 1067, 1075 (2006) (deeming *Batson* claim waived on collateral review for

failure to raise it at trial). This contemporaneous-to-trial focus is why I dissented from our prior order remanding this case to the PCRA court for consideration of appellant's *Batson* claim. *See James Jones I*, 876 A.2d at 388–89 (Castille, J., concurring and dissenting) (noting that appellant's *Batson* claim was "an attempt to secure, via the guise of ineffectiveness, the retroactive benefit of a non-retroactive decision").

I write separately also to address this Court's decision in *Commonwealth v. Uderra*, 580 Pa. 492, 862 A.2d 74 (2004). Citing *Uderra*, the Majority correctly holds that, to pursue a collateral claim premised upon a waived *Batson* issue, appellant must establish actual, purposeful discrimination since his failure to challenge the jury selection process at his trial upsets the normal *Batson* test. *Uderra* was a collateral appeal in which the appellant—like appellant herein—raised his *Batson* claim under the guise of ineffectiveness, asserting trial counsel's failure to claim, at trial, discriminatory jury selection. The *Batson*—derived issue addressed in *Uderra* was a question of federal law—namely, whether an appellant who failed to raise a contemporaneous objection to the jury selection process at his trial is entitled to the burden-shifting framework set forth in *Batson*. Recognizing that the High Court itself had left this issue unresolved, we determined that the "emerging view" on this federal question was that a defendant who failed to raise a contemporaneous *Batson* challenge is not entitled to the benefit of *Batson's* burden-shifting framework, "but instead, bears the burden in the first instance and throughout of establishing actual, purposeful discrimination." *Uderra*, 862 A.2d at 86 (citing Second Circuit's holding on issue in *McCrory v. Henderson*, 82 F.3d 1243, 1251 (2d Cir.1996), and supporting *dicta* in *Ford*, 498 U.S. at 422, 111 S.Ct. 850). Citing, *inter alia, McCrory*, the Third Circuit recently joined the ranks of its sister Circuits in interpreting *Batson* as requiring a contemporaneous objection. *See Abu–Jamal v. Horn*, 520 F.3d 272, 283–84 (3d Cir.2008) (citing, in addition to *McCrory, Allen v. Lee*, 366 F.3d 319, 327–28 (4th Cir.2004) (*en banc* ); *Sledd v. McKune*, 71 F.3d 797, 799 (10th Cir.1995); *Thomas v. Moore*, 866 F.2d 803, 804

(5th Cir.1989)).  Thus, *Uderra* has aligned Pennsylvania with the growing consensus of the federal Courts of Appeals that the U.S. Supreme Court "in *Batson* 'envisioned an objection raised during the jury selection process.'"  *Abu–Jamal*, 520 F.3d at 280–81 (quoting *McCrory*, 82 F.3d at 1247).

Finally, as the Majority correctly notes in concluding that the existence of the McMahon videotape does not support a *prima facie* case under *Batson* of discriminatory jury selection at appellant's trial, the trial took place approximately six years before the McMahon tape was created.  While I agree that appellant's reliance on the McMahon tape does not, for this reason, help him overcome his *Batson* waiver, I would also stress that the fact that appellant's trial took place nearly five years before *Batson* was even decided, in my view, utterly forecloses the possibility of *Batson* relief.  Appellant's *Batson* claim was always a non-starter.

Justice EAKIN joins this opinion.