J-S48018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DEREK J. WIGGINS | |
| Appellant | No. 1759 MDA 2016 |

Appeal from the PCRA Order October 7, 2016
In the Court of Common Pleas of Lancaster County
Criminal Division at No: CP-36-CR-0003921-2012

BEFORE:  OTT, STABILE, and PLATT,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED OCTOBER 16, 2017**

Appellant, Derek J. Wiggins, appeals from the October 7, 2016 order

entered in the Court of Common Pleas of Lancaster County ("PCRA court")

dismissing his petition pursuant to the Post Conviction Relief Act ("PCRA"),

42 Pa.C.S.A. §§ 9541-46.  Upon review, we affirm.

The PCRA court summarized the factual and procedural history of the

matter as follows.

> Jennifer Fisher and William Cornelius met and began
> dating in 2003, and in May of 2005, while both were still
> teenagers, Jennifer gave birth to a daughter, H.F.  Eventually,
> Jennifer and William broke up and a custody agreement was put
> in place.

---

[*] Retired Senior Judge assigned to the Superior Court.

In December of 2006, Jennifer started to date [Appellant]. Jennifer and [Appellant] married in March of 2007, and in 2009, Jennifer gave birth to a second daughter, [E.W.] That same year, William married, enlisted in the Army, and relocated to Kansas. In June of 2010, Jennifer and [Appellant] purchased a home located at 303 Banyan Circle in Lancaster. Given the distance between their residences, Jennifer and William agreed that H.F. would live with her mother during the school year and spend summers with William and his wife Brandy.

In July of 2011, H.F., then six years old, traveled to Kansas to visit William while he was on block leave from the military. At the end of her stay, William, Brandy, and H.F. drove back from Kansas to visit William's mother, Michelle Windle, in Thomasville, Pennsylvania. The family planned to stay with Michelle for a week, then travel to Virginia to see Brandy's mother.

While the family was staying at Michelle's home, H.F. disclosed to Brandy that [Appellant], whom she referred to as "Daddy Derek," had been sexually abusing her. Specifically, H.F. told Brandy that [Appellant] liked it when she put her mouth on his penis. Shocked, Brandy asked H.F. to repeat her statements to William. H.F. told her father that [Appellant] sexually assaulted her in her bedroom and in the bathroom of their home. Additionally, H.F. revealed that [Appellant] would "pee white stuff" into toilet paper during the encounters, and that [Appellant] put his mouth on her vagina.

After H.F. finished disclosing the abuse to her father, William instructed Brandy to take her to talk to Michelle, who was next door at a friend's home preparing dinner for the family. When confronted by Michelle, H.F. revealed, once again, that [Appellant] made her suck on his penis. William discussed H.F.'s statements with his mother, then contacted Jennifer and York County Children and Youth Services ("YCCYS").

The following day, YCCYS and the Northern Regional Police Department responded to Michelle's home to speak with the family. On July 25, 2011, Detective Tricia Mazur of the Manor Township Police received a report from YCCYS assigning her to H.F.'s case. In order to clarify the extent of the abuse, Detective Mazur scheduled a forensic interview for H.F. at the Lancaster County Children's Alliance on July 27, 2011.

- 2 -

During her interview, and in subsequent testimony and statements, H.F. revealed the details of the sexual abuse she had endured. H.F. stated that one night, after her family moved into the house at 303 Banyan Street, she attempted to use the bathroom and found that [Appellant] was inside. [Appellant] invited her to join him in the bathroom, and when she went in, H.F. observed that he was looking at something on the computer. [Appellant] put his computer aside and asked H.F. to touch his penis. Although she initially resisted, H.F. complied when [Appellant] threatened to tell Jennifer about the encounter. [Appellant] instructed H.F. to move her hands, and eventually her mouth, up and down over his penis. After this initial incident, H.F. revealed that [Appellant] made her touch his penis on numerous occasions.

Eventually, [Appellant's] conduct escalated to include vaginal penetration. H.F. disclosed that one evening, while her mother was at work, [Appellant] gave her a bath. Afterwards, [Appellant] told H.F. to go to her room to dry off. While H.F. was still undressed, [Appellant] entered her room and told her to lean down over the bed. [Appellant] then inserted his penis into her vagina. [Appellant] promised H.F. that he would stop abusing her after a family beach trip in the summer of 2011, and asked her to remind him of his promise.

Following H.F.'s forensic interview, on August 5, 2011, Julie Stover, a nurse practitioner and expert in child sexual abuse, performed a physical examination of H.F. at the Children's Alliance. While the results of H.F.'s examination were normal, Ms. Stover cautioned that the mucosal tissue lining the vagina and rectum typically heals within seventy-two hours of injury, and that visible scarring can only be observed in 5% of cases.

As a result of H.F.'s statements, on May 17, 2012, Detective Mazur charged [Appellant] with one count each of rape of a child, involuntary deviate sexual intercourse with a child, indecent assault, corruption of minors, and unlawful contact with a minor. Following a three-day jury trial[1] on November 1,

---

[1] At trial Appellant was represented by Ronald L. Greenblatt, Esquire, and Patricia V. Pierce, Esquire.

2013, [Appellant] was convicted of all charges and a pre-sentence investigation was ordered. On February 10, 2014, [Appellant] was sentenced to a total aggregate of 10-20 years' incarceration.

On March 7, 2014, [Appellant] filed a timely notice of appeal to the Superior Court, and on March 28, 2014, [Appellant] submitted his concise statement of errors complained of on appeal. In his statement, [Appellant] claimed that [the trial court] issued improper rulings on numerous evidentiary issues that arose during trial, and that the [trial] court provided the jury with incomplete instructions. The Superior Court affirmed [Appellant's] conviction and remanded to [the trial court] for resentencing based on the Superior Court's ruling in **Commonwealth v. Wolfe**, 106 A.3d 800 (Pa. Super. 2014). [The trial court] subsequently resentenced [Appellant] to 10-20 years' incarceration in accordance with that opinion.

[Appellant] filed the instant PCRA petition almost one year later. On July 11, 2016, [the trial court] issued a notice pursuant to Pa.R.Crim.P. 907, and [Appellant] filed an amended motion. After a conference with counsel and consideration of the amended motion, [the PCRA court] entered an order dismissing the amended motion and advising [Appellant] of his rights to appeal. After receiving [Appellant's] notice, [the PCRA court] issued a [Pa.R.A.P.] 1925 order, [Appellant] filed a timely statement of errors, and the Commonwealth filed a timely response.

PCRA Court Opinion, 12/19/16, at 1-6 (internal citations and footnotes omitted) (some capitalization omitted). The PCRA court issued a 1925(a) opinion on December 19, 2016.

Appellant raises four issues for our review, which we repeat verbatim.

[I.]    Whether the [PCRA] court erred in denying [Appellant's] amended PCRA when trial counsel failed to properly preserve for appellate review the claim that the court erred by failing to instruct the jury consistent with standard criminal jury instruction 4.08(A)?

[II.]   Whether trial counsel was ineffective when [they] failed to raise the issue of the admissibility of the circumstances

- 4 -

surrounding [Appellant's] discharge from the Marines prior to his direct testimony which resulted in the Commonwealth introducing unfairly prejudicial impeachment during cross examination?

[III.] Whether trial counsel was ineffective when [they] failed to argue in the lower court and during the direct appeal that the court's failure to permit evidence of David S. Cornelius, Sr.'s guilty plea to various offenses including three counts of indecent assault of his granddaughters resulted in the denial of [Appellant's] right to due process and confrontation under the Fifth, Sixth[,] and Fourteenth Amendments to the United States Constitution?

[IV.] Whether trial counsel was ineffective when they failed to ask the victim H.F. if any adult other than the police had spoken to her after the charges had been filed and when they failed to cross examine her concerning the viewing of an adult video?

Appellant's Brief at 4 (some capitalization omitted).

Our scope of review in a PCRA appeal is well established.

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted). All of Appellant's assertions of error on appeal are allegations of ineffective assistance of trial counsel. "It is well-established that counsel is presumed effective, and a [PCRA petitioner] bears the burden of proving

- 5 -

ineffectiveness." ***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 779-80 (Pa. Super. 2015) (*en banc*) (quoting ***Commonwealth v. Ligons***, 971 A.2d 1125, 1137 (Pa. 2009) (additional citations omitted)).

"To prevail on an [ineffectiveness] claim, a PCRA petitioner must plead and prove by a preponderance of the evidence that (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for acting or failing to act; and (3) the petitioner suffered resulting prejudice." ***Reyes-Rodriguez***, 111 A.3d at 780 (citations omitted). Furthermore, in order to prevail the petitioner must prove all three prongs of the ***Pierce*** test or the claim fails. ***Id.*** (citing ***Commonwealth v. Pierce***, 527 A.2d 973 (Pa. 1987)).

Appellant's first allegation of trial counsel ineffectiveness is counsel's failure to object to the trial court's jury instructions, specifically failing to instruct the jury consistent with standard jury instruction 4.08A, thus failing to preserve the issue for appellate review. While Appellant is correct that trial counsel failed to preserve this issue for direct appellate review, Appellant's PCRA claim fails as the underlying claim lacks merit.

> Standard Jury Instructions themselves are not binding and do not alter the discretion afforded trial courts in crafting jury instructions; rather, as their title suggests, the instructions are guides only. ***See Commonwealth v. Simpson***, 620 Pa. 60, 66 A.3d 253, 274-75 (2013) (citations omitted). Furthermore, counsel is not deemed ineffective for failing to object to a jury instruction given by the court where the instruction itself is justifiable or not otherwise improper. ***See Commonwealth v. Rainey***, 593 Pa. 67, 928 A.2d 215, 243 (2007).

*Commonwealth v. Eichinger*, 108 A.3d 821, 845 (Pa. 2014). On direct appeal, we review a trial court's jury instructions for an abuse of discretion or an inaccurate statement of law. *Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa. Super. 2013).

Standard Jury Instruction 4.08A regarding impeachment or substantive evidence-inconsistent statement reads as follows.

1. You have heard evidence that a witness, [*name of witness*], made a statement on an earlier occasion that was inconsistent with [his] [her] present testimony.

   *[First Alternative]*

2. You may, if you choose, regard this evidence as proof of the truth of anything that the witness said in the earlier statement. You may also consider this evidence to help you judge the credibility and weight of the testimony given by the witness at this trial.

   *[Second Alternative]*

2. You may consider this evidence for one purpose only, to help you judge the credibility and weight of the testimony given by the witness at this trial. You may not regard evidence of an earlier inconsistent statement as proof of the truth of anything said in that statement.

3. When you judge the credibility and weight of testimony, you are deciding whether you believe the testimony and how important you think it is.]

Pa. SSJI (Crim) § 4.08A (2016).[2]

In the matter *sub judice* the trial court issued the following instruction.

_____

[2] Appellant requested the first alternative instruction.

- 7 -

Throughout your lifetime, you've been deciding whether someone who speaks to you is telling you something which is truthful and straightforward, something upon which you can rely upon in your own affairs. Use the experience that you've gained in your everyday life as well as your own good common sense when you go into the jury room to deliberate and in determining the credibility of the witnesses and their testimony.

As the sole judges of the facts, you must decide the truthfulness and accuracy of each witness' testimony and decide whether to believe all or part or none of that testimony. The following are some examples of factors which you may try and consider when judging the credibility and deciding whether or not to believe the testimony. Was the witness able to see, hear, or know the things about which they testified? How well could the witness remember and describe the things about which they testified? Was the ability of the witness to see, hear, know, remember or describe affected by youth or old age or by any physical, mental or intellectual deficiency or impairment? Did the witness testify in a convincing manner? Did the witness have any interest in the outcome of the case, or any bias, prejudice or other motive that might affect the witness' testimony? How well does the testimony of the witness square with the other evidence in the case, including the testimony of the other witnesses?

While you're judging the credibility of each witness, you're likely to be judging the credibility of the other witnesses and evidence. If there's a real irreconcilable conflict, it is up to you to decide which, if any, conflicting testimony or evidence to believe. As the sole judges of credibility and facts, you, the jury, are responsible to give the testimony of every witness and all the other evidence whatever credibility and weight you think it deserves.

N.T. Jury Trial, 11/1/13, at 647-48. Moreover, the trial court added the following instruction shortly thereafter.

You may also take into consideration the interest, if any, which a witness may have had in the outcome of the case. It does not necessarily follow that because a person has a direct interest in what the verdict might be, that that person will willfully falsify any part of their testimony. Nevertheless, if an

interested party takes the stand and testifies, that interest, if any is a factor for you to take into consideration, along with all the other circumstances, in determining what weight you should place upon the testimony.

Where there is a conflict in testimony, you, the jury, have the duty of deciding which testimony to believe, but you should first try to reconcile, that is, fit together, any conflicts in the testimony if it can be done fairly and accurately. Discrepancies and conflicts between the testimony of different witnesses may or may not cause you to disbelieve some or all of their testimony. Remember, two or more persons witnessing an incident may see or hear it happen differently. Also, it's not uncommon for a witness to be innocently mistaken in his or her recollection of how something happened. If you cannot reconcile a conflict in the testimony, it is up for you to decide which testimony, if any, to believe and which to reject as untrue or inaccurate.

In making the decision to consider whether the conflict – in making this decision, consider whether the conflict involves a matter of importance or merely some detail, and whether the conflict is brought about by an innocent mistake or intentional falsehood. You should also keep in mind all the other factors which I've already discussed with you in deciding whether or not to believe a witness.

If you conclude that a witness deliberately testified falsely about a manner which could affect the outcome of the trial, then you may, if you wish, for that reason alone, choose to disbelieve the rest of the witness' testimony; however, you're not required to do so for this reason. It is entirely possible that the witness testified falsely and intentionally in one respect but truthfully about anything else. If that is the situation, then you may accept that part of the witness' testimony which is truthful and which you believe, and you may reject that part which is false and not worthy of belief.

*Id.* at 651-52.

As discussed above, a trial court has broad discretion in crafting jury instructions. *See Antidormi*, 84 A.3d at 754. Moreover, "[i]n reviewing a

challenged jury instruction, an appellate court must consider the entire charge as a whole, not merely isolated fragments, to ascertain whether the instruction fairly conveys the legal principles at issue." ***Commonwealth v. King***, 721 A.2d 763, 779 (Pa. 1998) (citing ***Commonwealth v. Jones***, 683 A.2d 1181, 1196 (Pa. 1996)). Upon review of the jury instructions issued in the matter *sub judice*, it is clear that the trial court properly instructed the jury regarding the law; thus, the trial court did not commit an abuse of discretion. As the underlying claim lacks merit, trial counsel did not provide ineffective assistance of counsel when they failed to object to the jury instructions. ***See Commonwealth v. Sheppard***, 648 A.2d 563 (Pa. Super. 1994) ("Counsel will not be deemed ineffective for failing to assert a baseless claim.") (citing ***Commonwealth v. Cook***, 557 A.2d 421, 425 (Pa. Super. 1989)). Appellant's first claim fails.

Appellant's second claim alleges trial counsel was ineffective when they introduced evidence of Appellant's honorable military discharge, which opened the door to questions regarding the conditions of his discharge.[3] Appellant asserts that this is tantamount to trial counsel who introduced a defendant's otherwise inadmissible criminal convictions, and thus constitutes ineffective assistance of counsel. Appellant's Brief at 23; ***see***

_____

[3] Appellant was honorably discharged from the military; however, his discharge contained conditions that dropped him a paygrade and that he was not permitted to reenlist.

- 10 -

*Commonwealth v. Moore*, 715 A.2d 448, 452 (Pa. Super. 1998). Appellant argues that trial counsel should have filed a motion *in limine* to determine whether the trial court would permit testimony regarding the honorable discharge and its conditions prior to asking Appellant about such discharge.

On appeal, a petitioner must adequately discuss all three factors of the '*Pierce* test,' including prejudice. *Reyes-Rodriguez*, *supra*. Appellant's claim was not waived, it lacks merit. Trial counsel raised the issue prior to introducing the testimony during the trial. *See* N.T Jury Trial, 10/29/13, at 35-37. After raising the issue, the court deferred an evidentiary ruling.[4] When the Commonwealth attempted to rebut the testimony, trial counsel again objected. *See* N.T Jury Trial, 10/31/13, at 542-43.[5] "To demonstrate prejudice, the petitioner must show that there is 'a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different.'" *Commonwealth v. Colavita*, 993 A.2d 874, 887 (Pa. 2010) (quoting *Commonwealth v. Sneed*, 899 A.2d 1067, 1084 (Pa.

---

[4] The trial court stated that "I'm going to have to see how that plays out then, see what the exact testimony is." N.T. Jury Trial, 10/29/13, at 37.

[5] Moreover, it appears that trial counsel had a reasonable basis for introducing the evidence because it introduced evidence that Appellant was honorably discharged from military service. The introduction of evidence that there were conditions on his honorable discharge could only soften the net positive impact of this character evidence.

2006), *abrogated on other grounds by **Commonwealth v. Jones***, 951 A.2d 294 (Pa. 2008) (citing ***Strickland v. Washington***, 466 U.S. 668, 694 (1984))). The possible prejudice in the matter is that the jury learned that Appellant's honorable discharge included conditions that otherwise might not be included in a standard honorable discharge. In light of the overwhelming evidence in this matter, namely five days of testimony, there is no reasonable probability that discovering Appellant's **honorable** discharge had conditions, regarding reenlistment, would have changed the result of the proceeding. Appellant's claim fails.

Next, Appellant asserts that trial counsel was ineffective because they failed to raise a constitutional argument for the introduction of David Cornelius, Sr.'s,[6] guilty pleas, without convictions,[7] to three counts of indecent assault involving a granddaughter. Trial counsel previously raised the issue of admissibility of such evidence at trial and on direct appeal; however, the claim lacked merit. ***See Commonwealth v. Wiggins***, 440 MDA 2014, unpublished memorandum at 6 (Pa. Super. filed June 9, 2015). For purposes of obtaining PCRA relief, an issue must not have been previously litigated. 42 Pa.C.S.A. § 9543(a)(3). An issue is previously litigated if "the highest appellate court in which the petitioner could have had

---

[6] David Cornelius, Sr., was the great-grandfather of the victim.

[7] David Cornelius, Sr., died before sentencing, thus the charges were *nolle prossed*.

review as a matter of right has ruled on the merits of the issue[.]" 42 Pa.C.S.A. § 9544(a)(2). Moreover, "an 'appellant cannot obtain post-conviction review of claims previously litigated on appeal by challenging ineffective assistance of prior counsel and presenting new theories of relief to support previously litigated claims.'" *Commonwealth v. Santiago*, 855 A.2d 682, 697 (Pa. 2004) (quoting *Commonwealth v. Beasley*, 678 A.2d 773, 778 (Pa. 1996)).

> The relevant inquiry when determining whether a PCRA petitioner is properly asserting a new and distinct issue, rather than simply re-labeling and reasserting a previously litigated one, is whether the ineffectiveness claim constitutes a "discrete legal ground or merely an alternative theory in support of the same underlying issue that was raised on direct appeal."

*Commonwealth v. Gwynn*, 943 A.d 940, 944-45 (Pa. 2008) (quoting *Commonwealth v. Collins*, 888 A.2d 564, 570 (Pa. 2005)). It is apparent that Appellant is attempting to reassert a previously litigated claim, that the evidence of David Cornelius, Sr., should have been admitted into evidence. Thus, Appellant is not entitled to relief under the PCRA as it was previously litigated. *See* 42 Pa.C.S.A. § 9544(a)(2).

Lastly, Appellant asserts that trial counsel was ineffective for failing to adequately cross-examine the victim. Counsel's brief is bereft of discussion regarding any prejudice or reasonable basis of counsel's decision regarding the cross-examination of the victim; thus, Appellant's claim is waived. *See Reyes-Rodriguez*, 111 A.3d at 780 ("[O]n appeal, a petitioner must adequately discuss all three factors of the "*Pierce* test," or the appellate

- 13 -

court will reject the claim"). Even if the claim was not waived it lacks merit. Appellant asserts that trial counsel failed to cross-examine the victim regarding an adult video she viewed while living in North Carolina. Appellant's trial counsel questioned the victim extensively regarding adult videos. *See* N.T. Jury Trial, 10/29/13, at 135-37, 141-44. Thus, this claim is without merit.

Finally, Appellant asserts that trial counsel failed to cross-examine the victim regarding what she told adults other than police officers. This claim is meritless as counsel repeatedly asked the victim about what she told others. *See* N.T. Jury Trial 10/29/13, at 122-24, 129, 146-47, 149, 151-57, 159, 163. Thus, Appellant's claim is meritless.

All of Appellant's claims are either waived, meritless, or both. We therefore affirm the trial court's order dismissing Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/2017